## John S. Gage, Appellant, v. Village of Wilmette et al., Appellees.

### Gen. No. 28,961.

1. EQUITY—*demurrer to amended bill after answer filed to original.* A demurrer to an amended bill for an injunction is properly allowed, even though the demurrer reads "to the said amendment to the bill of complaint" and an answer was filed to the original bill, where the demurrer was clearly directed to the entire bill as amended and was so treated in all the proceedings, since the amended bill, which restated the matter of the original bill with additional and supplemental matter, displaced the original bill and the answer to the latter fell therewith.

2. MUNICIPAL CORPORATIONS—*power to sell water to nonresidents.* The Municipal Ownership Act (Cahill's Ill. St. 1921, ch. 111a, ¶ 4) confers no authority on a city or village which does not own or operate a plant for pumping water from the original source of supply to purchase water for, or to distribute the same to, persons outside of its limits.

3. MUNICIPAL CORPORATIONS—*duty as to sale of water to nonresidents.* On a bill to enjoin a village from refusing to continue the water supply theretofore furnished complainant, who resided outside of the village limits, by defendant village which purchased its water supply from an adjacent city, *held*, that in the absence of statutory authority therefor it could not be said that under the facts pleaded there was any duty on defendant to furnish water to persons outside the village limits and that in such circumstances the question of unjust discrimination by defendant could not arise.

4. MUNICIPAL CORPORATIONS—*termination of contract for sale of water to nonresident.* A contract by which a village, having no statutory authority to supply water to persons residing outside of its limits, agrees to supply water to such a nonresident, but which does not bind the village to furnish, nor the nonresident to take water for any specified time, may be terminated by either on reasonable notice to the other,

5. MUNICIPAL CORPORATIONS—*right to discontinue supplying water to nonresident.* A village which has no right to supply water to one residing outside of its limits is under no duty to continue a supply theretofore afforded him.

6. MUNICIPAL CORPORATIONS—*denial of injunction against interference with manhole connected with water mains.* On a bill to enjoin a village from cutting off the water which it had theretofore supplied complainant, residing outside of the village limits, and to restrain the village from closing a manhole, connected with such supply, which manhole is alleged to be located in a public highway opposite complainant's property and outside of such limits, where there is nothing to show but that the manhole was for the use of the village and that it had the right to close it and shut off the water and owed complainant no duty in respect thereto, an order dismissing the bill will be sustained.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1923. Affirmed. Opinion filed May 27, 1924. Rehearing denied June 10, 1924.

FRANK N. REED, for appellant.

FREDERIC B. CROSSLEY, for appellees; ELMER M. LEESMAN and RAYMOND C. SCHNELL, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

This is a bill for injunction filed by John S. Gage against the Village of Wilmette and certain of its officers. After the original bill was answered plaintiff took leave to amend the bill, to which as amended defendants demurred. The demurrer was sustained and complainant electing to stand upon his amended bill, it was dismissed for want of equity, and this appeal was taken.

Appellant's first point is that the demurrer, reading as it does, "to the said amendment to the bill of complaint" was improperly allowed because there was an answer filed to the original bill. While the demurrer reads as above quoted it was clearly directed

to the entire bill as amended, and was so understood and treated in all the proceedings. The amended bill restated what was in the original bill, with additional and supplemental matter. It, therefore, constituted a new case and would have operated to vacate any previous decretal order in the case, had any been entered, and had the effect to displace the original bill. (*Odell v. Levy*, 307 Ill. 277.) It necessarily follows that the answer to the original bill fell with it.

The bill as amended alleges that complainant for many years has been a resident of the Village of Wilmette and the owner of property on Sheridan Road about 500 feet north of the limits of said village, on which is a cottage, and has charge of another cottage just north of it for a nonresident; that for more than seven years last past said cottages have been furnished with water by said village on his application therefor, through water mains in front of the cottages connected with water mains of said village; that the village put in the service taps connecting the cottages with the water mains in front thereof, and has submitted bills for the water supplied, for repair of the pipes leading to the cottages and for meters furnished in accordance with the village ordinance, all of which have been duly paid and that there is no other source of water supply to said cottages; that complainant has a contract with said village—neither the terms nor details of which are set forth, but which is described as "either express or implied"—to furnish water for use in said cottages, and unless it shall continue to be supplied as heretofore he will suffer irreparable damage.

It is further alleged that for a number of years said village has maintained and operated a water plant for the purpose of distributing and selling water to customers within and without said village; that the water so pumped and distributed is obtained from the City of Evanston under a contract with said city; that in so pumping and distributing said water the

village operates and maintains a public utility and has a fixed rate of payment for water sold in the village and another rate for water sold and distributed without its limits; that for many years the village has supplied customers with water who were not residents of any municipality, and has thereby assumed the position of a public utility for the sale of water to customers outside of its corporate limits, which the bill alleges it is duly authorized and empowered to do under paragraph 4 of the act of June 26, 1913, as amended June 27, 1921 [Cahill's Ill. St. ch. 111a, ¶ 4], authorizing cities and villages to acquire, construct, own, and to lease or operate public utilities.

The amended bill further alleges that said village was authorized and empowered to own and operate its water plant and to sell water by the act approved April 15, 1873, and amended May 14, 1879 [Cahill's Ill. St. ch. 24, ¶ 1062 et seq.], and to enter into a contract with another city for a supply of water for its plant, and that in the exercise of said authority said village on or about July 1, 1892, entered into a contract with the City of Evanston to supply it with water, and that the City of Evanston is still supplying the water plant of the Village of Wilmette with water under a renewal of said contract, and that the supply is ample and sufficient to enable the village to continue furnishing water to complainant, and the City of Evanston has not refused to furnish the same.

The bill then sets up by way of supplement that at the time of filing the bill complainant was being supplied with water as required but its officers were threatening to turn off the water, and that since the filing of the original bill the village has cut off his supply of water.

The bill further alleges that the manhole containing the "shut-off" is in Sheridan Road about 100 feet north of the village limits, and both belong to the owners of property facing Sheridan Road, including complainant, and that without the knowledge and con-

sent of complainant the village through its employees or servants has caused the manhole to be filled up, and by such acts the village has assumed to favor some and discriminate against other water takers through its system of water supply.

A more detailed statement of the averments is unnecessary to a decision of the controlling questions. The bill prays that the village may be restrained from turning off or discontinuing the water supply and from cutting off the usual and customary supply from its plant to the premises in question, and that if the agents of the village have turned off the water they may be ordered by a mandatory injunction to turn it on or have the supply continued to said premises.

Regardless of whether any contract exists between the Village of Wilmette and complainant—which, as may be inferred from the lack of any averments to show a definite or express contract, the pleader evidently regards as implied from the fact that the former has supplied the latter with water for seven or eight years,—the controlling question is whether the village has authority under the pleaded facts to furnish water to persons outside of its limits.

For such authority appellant relies on section 4 of the Municipal Ownership Act (Laws of 1913, p. 455; Ch. 111a, Par. 4, Cahill's Stat. of 1921, p. 2701) which provides for the sale of water "within and without the city from any water plant owned and operated by the city." But we think it is clear from the averments of the bill that as the Village of Wilmette obtains its water supply from the City of Evanston and distributes the same through its own plant, that its plant is merely one for distribution and not for pumping water from the original source of supply. It is apparently only to a city owning or operating a plant of the latter character that the right to sell water to another city is given by the act, and we find nothing in the statutes which authorizes a city or village not owning or operating such a plant to purchase water

for, or to distribute the same to, persons outside of its limits. Presumably a city or village, entering into a contract for supplying it with water, does so only for the benefit of those within its limits, whom it is organized to serve and whom it may tax for the benefit. In the absence of statutory authority therefor it cannot be said that under the facts pleaded there is any duty of the village to furnish water to persons outside of its limits, and if not, then the question of unjust discrimination argued does not arise.

Discussing this subject in Dillon on Municipal Corporations, 5th Ed., Vol. 3, Sec. 1299, p. 2121, the author says:

"The purpose for which a municipality is authorized to construct water works or to contract for a supply of water is usually to supply its own needs and the needs of its inhabitants, and it may be laid down as a general rule that a grant of power to any municipality for these purposes gives it by implication no authority to enter into the business of furnishing water to persons beyond the municipal limits." (See also cases there cited.)

Assuming the right of one municipality to enter into a contract to furnish water to another,—a question not raised here and not as yet considered by the Supreme Court (*Carr v. City of Athens*, 304 Ill. 212; *Springfield Gas & Electric Co. v. The City of Springfield*, 292 Ill. 236)—and assuming that there was a contract between complainant and the Village of Wilmette to furnish him water, yet the bill does not contain the terms of the contract or any allegation from which it may be inferred that complainant was bound to take, or the village to furnish, water for any specified time, and in such a case the contract might be terminated by either, on giving notice of reasonable intention to the other (*Childs v. City of Columbia*, 87 S. C. 571), provided there was no duty otherwise to supply it. But no notice is here pleaded. The bill is predicated on the theory that the village was in duty

bound to furnish the water, after it had assumed to supply it, so long as complainant complied with requirements. If, as we hold, it had no right to furnish the water at all, no duty existed to continue the supply.

So far as the bill seeks relief against alleged repeated trespass in filling up the manhole we think it is enough to say that the bill, construed as it must be most strongly against the pleader, shows that the manhole and shut-off were in a public street, and though opposite the premises of complainant there is nothing to show but that the village had the right to close the manhole and shut off the water. If it was for the use of the village and it owed plaintiff no duty with respect thereto then he apparently has no ground for complaint. The order dismissing the bill will be sustained. A like conclusion was reached in an opinion of the third division of this court filed April 30, 1924, in case #28352, *Mary B. Gage et al. v. Village of Wilmette et al.*

*Affirmed.*

GRIDLEY, P. J., and FITCH, J., concur.