## Davisworth et al. v. City Of Lexington.

October 7, 1949.

Rehearing denied December 16, 1949.

J. Harry Stamper and Earle Fowler for appellants.

Leer Buckley and Richard P. Stoll for appellee.

CLAY, COMMISSIONER—Affirming.

Appellants, in this declaratory judgment proceeding, seek to have declared void a 1948 ordinance of the City of Lexington increasing the rates charged for use of its sewer system by property owners living outside the city limits. The Circuit Court (Special Judge Jay Harlan sitting) adjudged the ordinance valid. Reversal is urged on two grounds: (1) the ordinance violates a pre-existing contract between the City and the non-

resident users of the service, and (2) the new rates fixed are arbitrary, unreasonable, excessive, and discriminatory.

For a number of years suburban residential developments have expanded well beyond the city limits of Lexington. Prior to 1935, the City permitted the non-resident property owners to connect their private sewer lines to the city system. No charges were made for this privilege. In 1935 the City enacted ordinance No. 463, fixing a scale of fees to be paid for the use of the city facilities by those non-residents, and providing for the issuance of a permit by the City Treasurer. These charges ranged from $4.20 per year to $9.00 per year, depending upon the type of residential structure.

Interested parties brought suit attacking this 1935 ordinance. In City of Lexington v. Jones et al., 289 Ky. 719, 160 S. W. 2d 19, we sustained its validity.

Subsequent to the above decision (in 1942) the property owners and the City entered into an agreement with respect to the payment of charges accrued during the pendency of the suit. As a result of negotiations, the City on October 22, 1942 enacted ordinance No. 1532, which permitted non-resident users to pay the fees for the years 1938 to 1942 without interest, and authorized a refund of those paid prior to 1938. Thereafter the regular charges fixed by the original ordinance were paid by the property owners through the year 1948.

On December 28, 1948, the City Commissioners passed ordinance No. 2404, which is the one assailed in this litigation. A new and increased rate was established. The minimum was $25 per year for each residence, and ranged up to $200 per year for industrial or commercial structures.

Appellants' first contention is that the City, in enacting the earlier ordinance, No. 463, and the ratifying ordinance, No. 1532, entered into an irrevocable contract with the non-resident users and thereby agreed the rates originally fixed were reasonable, and the service at these rates would be continued for a forty year period. There are at least three reasons why appellants' contract theory cannot be sustained.

In the first place, ordinance No. 1532 concerns no

agreement except that pertaining to the payment or refund of charges already accrued under the original ordinance, No. 463. If it purported to carry out any other understanding, the evidence fails to disclose one of sufficient definiteness to constitute an enforceable contract.

Secondly, if certain city officials had entered into an additional agreement with appellants or those they represent, it is not shown such officials had authority to bind the City, nor could the City be bound except by formal action of its Board of Commissioners speaking through its records. See Creekmore et al. v. Central Construction Company, 157 Ky. 336, 163 S. W. 194, and Jameison v. City of Paducah, 195 Ky. 71, 241 S. W. 327.

In the third place, the non-resident users furnished no consideration whatsoever for any alleged agreement. The charges had already accrued under the original ordinance and constituted enforceable obligations owed the City. The compromise was solely for the property owners' benefit. Insofar as future charges were concerned, they did not obligate themselves to use the service, nor did they undertake or forbear to do anything else. Therefore, if there was such an agreement as claimed, which we cannot find from the evidence, it was wholly unsupported by any benefit to the City or detriment to appellants. It is elemental that the City's unilateral promise, if any, was not legally enforceable.

Appellants' second proposition is that the rates fixed by the 1948 ordinance are arbitrary, unreasonable, excessive, and discriminatory. While the evidence may tend to support appellants' contention on this point, a determination of the question is not necessary for the disposition of this case. It is the opinion of the Court that the City has the right to fix such rates to be charged those living beyond the corporate limits as it deems necessary, without regard to the factors just stated, in the absence of a contract or circumstances creating an estoppel. This may seem at first glance a harsh rule, but analysis will clearly demonstrate its justification.

The right of a city to furnish this type of service to those who reside without its limits, where the city

does not attempt to construct and operate the extended facilities, is not in question. See Rogers v. City of Wickliffe, 94 S. W. 24, 29 Ky. Law Rep. 587; City of Henderson v. Young, 119 Ky. 224, 83 S. W. 583. It is not, and could not plausibly be contended that the City initially is under any duty to furnish such service. See McQuillin, Municipal Corporations, (2d Ed. 1943) Section 1821, page 1079; and Dyer v. City of Newport, 123 Ky. 203, 94 S. W. 25. Surely those who have never used the service would have no right whatsoever to tie into the city system without its permission, and no law or principle requires the granting of such permission.

Approaching the heart of our particular problem, we may ask: Where the City has permitted non-residents to use its sewer system for a number of years, may it require them to discontinue such use? The query is answered by posing a counter-question: Why not? The City's essential duties are owed to its inhabitants. Non-residents have no lawful claim upon any city service. Any use of city facilities by non-residents is wholly permissive (in the absence of contract or estoppel) and not based upon legal right. In this case Lexington has done no more than acquiesce in what would be, without its permission, a trespass upon its property by appellants and those similarly situated. The latter became mere licensees, and acquired no prerogative claim to a continuance of such license. It follows that the City's consent could be withdrawn at will.

The fact that appellants have spent substantial sums of money to connect with the city system creates no right to a continuance of the privilege. Such expenditures were purely voluntary, and were not induced by affirmative action on the part of the City. Appellants assumed the risk that the City might be unable to continue this service or might find it expedient to increase substantially its charges. Likewise, the fact that appellants have in the past paid for the use of the city facilities does not increase their stature before the law. They have simply paid on an annual basis for value received during the year.

If then, the City may discontinue the service altogether, it clearly may fix in its own discretion the charges to be paid by those who wish its continuance. At this

point the contention may be made that a municipality is a public corporation and not a private individual, and the public interest requires that all of its acts be reasonable and non-discriminatory. This is true insofar as the City is performing a function for its inhabitants, who constitute its limited public to whom its duties are owed. It owes no public duty to non-inhabitants.

Our view finds strong support in the case of City of Phoenix v. Kasun, 54 Ariz. 470, 97 P. 2d 210, 127 A. L. R. 84. In that case suit was brought to enjoin the enforcement of a city ordinance increasing water rates of consumers outside the city limits. The Arizona Supreme Court held that it was without jurisdiction to determine the reasonableness or unreasonableness of the new charges. The Court pointed out that a city may not compel consumers outside of its limits to purchase water from it, nor can it be compelled to furnish this service. It was further noted that the city in furnishing a service which it is not required to furnish is acting in a private capacity as distinguished from a public one, and without the duty to serve, there is no requirement that the charges made therefor shall be reasonable. The Court concluded, 54 Ariz. at page 480, 97 P. 2d at page 214: ''After a careful consideration of all the authorities, we are of the opinion that the controlling factors in the present case are that the city was under no obligation, as a matter of law, to furnish any service to the plaintiffs; that the relationship between them was purely contractual in its nature, and that such being the case, the reasonableness or unreasonableness of the rates fixed by the contract are not subject to review by the court.''

In Childs v. City of Columbia, 87 S. C. 566, 70 S. E. 296, 34 L. R. A., N. S., 542, suit was brought to enjoin a city from charging a non-resident user excessive charges for water service. The Court in denying the injunction stated, 87 S. C. at page 571, 70 S. E. at page 298: ''Assuming that the city authorities had the power to contract with the plaintiff to furnish water for his residence and other houses, and that the duty devolves on them of contracting for the sale of any excess of the city's water supply beyond the municipal needs and the needs of its inhabitants, it is, nevertheless, perfectly obvious that the duty to sell the excess of its water sup-

ply did not import an obligation to make a contract with any particular person at a reasonable price; but, on the contrary, did import an obligation to sell its surplus water for the sole benefit of the city at the highest price obtainable. It was a duty not owed to outsiders, but exclusively to inhabitants and taxpayers of the city. It follows that the plaintiff as a mere nonresident had no rights whatever against the city, except such as he may have acquired by contract. In other words, the city was under no public duty to furnish water to the plaintiff at reasonable rates or to furnish it at all, and to obtain the injunction the plaintiff must show that the city is about to violate its contract with him."

Additional cases in a similar vein are: Collier v. City of Atlanta, 178 Ga. 575, 173 S. W. 853, and Guth v. City of Staples, 183 Minn. 552, 237 N. W. 411.

Under the facts here shown, it is our conclusion that: the City of Lexington initially was under no duty to permit the use of its sewer facilities by those living outside the corporate limits; no continuing contract to furnish this service was at any time entered into by the City; the permissive use of its facilities did not create an estoppel; it could require appellants to discontinue such use; and in return for further extension of the privilege, it may fix such charges as it deems necessary. Therefore, the ordinance in controversy is not invalid on the grounds asserted.

The judgment is affirmed.