Chester A. Rehm, and Elsie F. Rehm, Plaintiffs-Appellants v. City of Batavia, Defendant-Appellee.

Gen. No. 10,791.

Second District.

April 6, 1955.

Released for publication April 26, 1955.

Cooper & Donat, of Batavia, for plaintiffs-appellants; Richard L. Cooper, and Anthony F. Donat, both of Batavia, of counsel.

Schuyler, Richert & Stough, of Chicago, for defendant-appellee; Daniel M. Schuyler, and Joseph R. Julin, both of Chicago, and Thomas A. Mair, of Batavia, of counsel.

442

MR. JUSTICE DOVE delivered the opinion of the court.

On September 25, 1953, Chester A. Rehm and Elsie F. Rehm filed their complaint in the circuit court of Kane county alleging that they were residents of Batavia township, Kane county, Illinois, and engaged in the business of buying, subdividing, and selling real estate and that they are the owners of certain property described as a subdivision and located outside the corporate limits of the City of Batavia and are, also, the owners of certain water mains, valves, and fittings lying in and along certain designated streets and also in and along Carlisle Road within said subdivision; that the defendant is a municipal corporation, duly incorporated under the laws of this State, and, pursuant to law, operates a municipally owned waterworks plant, and that it has an ample supply of water with which to satisfy its present customers and those that it may reasonably be expected to acquire within a reasonable time hence.

The complaint then alleged that on May 28, 1941, the defendant city entered into a written contract with Franklin H. Hayes and Edward Reque by the terms of which the city agreed to deliver and sell to Hayes and Reque, at the corporate limits of the city, water to be used for domestic, residential, and fire-fighting purposes in a described subdivision referred to in the record as Tract A, and owned by Hayes and Reque, said water to be measured by a meter to be installed at or near the southerly corporate limits of the city; that said meter was to be owned and controlled by the city, although the cost of the meter and its installation were to be borne by Reque and Hayes; that Hayes and Reque were obligated to pay for the water to be used at a rate 25 per cent in excess of the rate charged a customer for a similar amount of water who lived within the corporate limits of the city, and that Reque and Hayes agreed to be bound by all the ordinances, laws, rules,

443

▉▉▉▉▉▉▉▉▉▉▉▉▉

and regulations of the defendant which apply to other users of water furnished by the defendant.

The complaint then alleged that on June 25, 1941, said Franklin H. Hayes entered into a written agreement with Franklin L. Morris, who owned certain real estate lying between the Hayes-Reque subdivision and the corporate limits of the city where the water deliveries were to be made; that by the terms of this agreement, Hayes was granted an easement in the real estate of Morris to lay a six-inch water main through which Hayes and Reque were to transmit the water they were to purchase from the city to their subdivision; that by this agreement, Morris was given the right to certain water connections to the said six-inch water main without charge and such additional connections as desired upon the payment of $15 for each connection until a total of $500 had been paid and that, thereafter, Morris and his heirs or assigns were permitted to make as many connections to said six-inch main as desired. It is then alleged that similar agreements were made with owners of other real estate lying between the corporate limits of Batavia and said subdivision, and thereafter the six-inch water main was installed in the easements granted by the several owners, and the subdivision of Hayes and Reque and the intervening areas were supplied with water through that six-inch main.

The complaint then alleged that on February 25, 1946, Morris sold and transferred his premises to the plaintiffs and assigned to them all his right, title, and interest in and to the said agreement of June 25, 1941, executed by Morris and Hayes. The complaint then charges that the land of the plaintiffs, as well as other land lying between the corporate limits of the city and the subdivision of Hayes and Reque, was subdivided and that the plaintiffs and others have installed water service lines on their premises and received water transmitted through said six-inch water main after it

444

was metered and delivered under the provisions of the contract between the city and Hayes and Reque.

The complaint then charged that in the year 1948, at a great cost to themselves, the plaintiffs laid in a public street (Carlisle Road) a four-inch water main and connected it with the six-inch main; that a majority of property owners served by this six-inch water main purchased their meters used to so measure the water from the water department of the defendant city, and that an employee of the water department read the meters so installed, although he was paid for such work by Hayes and Reque, or their successors, and that this practice has continued for many years.

It was then alleged that the city, on July 10, 1953, wrongfully and without leave, closed the valves in the four-inch water main in Carlisle Road, which four-inch main was connected with the said six-inch water main; that the plaintiffs have made oral and written requests of defendant to open said valve, but the city refuses to do so, resulting in irreparable damage to the plaintiffs.

The prayer of the complaint was for a money judgment and, also, for a permanent injunction and that, pending the hearing, a temporary injunction be issued without notice and without bond restraining the defendant from entering upon plaintiffs' property or interfering with or tampering with plaintiffs' water mains, valves, or fittings wherever situated.

Attached to the complaint were copies of Rehm's second subdivision and Rehm's third subdivision to Batavia, together with certified portions of certain proceedings of the city council and copies of the contract entered into by Hayes and Reque and the defendant on May 28, 1941, and of the agreement of June 25, 1941, executed by Franklin L. Morris and Franklin H. Hayes.

The record shows that on September 29, 1953, the motion of the plaintiffs for a temporary injunction was

445

heard and a temporary injunction issued without notice and without bond enjoining the city from entering upon plaintiffs' property and from in any manner interfering or tampering with plaintiffs' valves, fittings, or water valves or lines wherever situated. On October 19, 1953, a motion of the city to dismiss the complaint and dissolve the temporary injunction was filed. The grounds set up in this motion were that the complaint did not state a cause of action; that the complaint shows there were no dealings between the plaintiffs and defendant concerning the subject matter of the suit and that the complaint shows that the defendant did not enter upon the property or premises of the plaintiffs. This motion was, on June 11, 1954, sustained and the preliminary injunction dissolved. The plaintiffs elected to stand upon their complaint, and, from an appropriate final judgment dismissing the complaint, plaintiffs prosecute this appeal.

Counsel for appellants state that appellee, under the laws of this State, is authorized to operate a waterworks system or water supply system within or without its corporate limits; that in its operation and maintenance of its waterworks system, the city acts in a proprietary, as distinguished from a governmental, capacity; that it is a public utility insofar as it furnishes, sells, and delivers water, and that it is bound to serve all people to the extent that its capacity for such use may admit. Counsel continue: "Here the plaintiff purchased land, the title to which gave him access to a supply of water. He subdivided his land and sold lots with the representation that water was available. His representations were founded on contractual obligations assigned to him at the time he purchased the land. He acted in good faith. Many houses were built and many families now occupy them. Their sole source of water so far as this record reveals is the water coming to them from the six-inch water main installed by Hayes and Reque under the contract

with the defendant. For nearly ten years the citizens living in the plaintiffs' subdivision and other areas mentioned in the complaint have rested secure in the thought that their water supply was theirs as of right. This sense of security was justified because in the title to each lot in the plaintiffs' subdivision, as well as in the title to each lot in the adjoining subdivisions, their right to water appeared of record. The defendant now asserts that equity will not protect the rights accruing to all of these householders by virtue of contracts entered into by their predecessors in title. The defendant asserts it has the right to deprive this large number of people of sanitary facilities and household water after having acquiesced heretofore in their obtaining water for those purposes. So novel an attitude in a court of equity on the part of public officials," insist counsel, "is somewhat shocking." Counsel then conclude by insisting that the order vacating the temporary injunction and dismissing the suit should be reversed.

Counsel for the city insists that the complaint does not state any facts from which an obligation or duty, contractual or otherwise, arises which would require the city to furnish residences in plaintiffs' subdivision with a supply of water and that plaintiffs have no standing in a court of equity to complain of the acts of the defendant taken to prevent a wrongful diversion of its water supply.

The city's contract of May 28, 1941, it is to be remembered, was with Hayes and Reque, and by it the city agreed to furnish them, at or near the corporate limits of the City of Batavia, a supply of water to be used for domestic, residential, or fire-fighting purposes, and "to be consumed only on the property described in Tract A, Fox River View, Kane County, Illinois." Tract A was at that time owned by Hayes and Reque. This water was to be paid for by Hayes and Reque after it was measured through a master meter located at or

447

near the corporate limits. The city has no contract with the plaintiffs, nor has it had any direct dealings with the plaintiffs, and counsel for appellants recognize this as they state in their reply brief that "in the present case, the plaintiff has no contractual relationship with the defendant. There is no privity of contract."

In the contract of June 25, 1941, between Hayes and Morris, herein referred to, Morris granted Hayes an easement which permitted him to lay a six-inch water main from the corporate limits to Tract A. Morris was the owner of the land lying between the corporate limits and Tract A owned by Hayes and Reque. In consideration for this grant, Hayes attempted to give Morris certain tap-on or water connection privileges and rights, which would enable him to obtain a supply of water for the land of Morris' which lay between the city and Tract A. Thereafter, and on February 25, 1946, Morris sold the land in question to the plaintiffs and attempted to assign and transfer to them his tap-on and water connection privileges which Hayes had granted him in the agreement of June 25, 1941. Plaintiffs thereafter, at their own expense and without the city's approval, laid a four-inch water main in Carlisle Road, a public road outside of the city and also outside of the plaintiffs' subdivision.

There is no allegation in the complaint that the defendant by the closing of the valve in question in Carlisle Road has deprived any existing householder-user of a water supply. The closing of this valve did not prevent water from being taken for the lots as of that time, or of any time previously, which were being supplied or had been supplied with water.

The plaintiffs contend, in substance, that even though they have never dealt directly with the city, and even though they have no contractual relationship with the city, they have nevertheless acquired certain contrac-

448

tual rights as assignees of their predecessors in title, or, in the alternative, that even though they have no claim in contract against the city, they can compel the city to furnish a water supply to the plaintiffs' subdivision either because the city is under obligation to furnish such water supply to Tract A (the original Hayes-Reque subdivision) or, since the city has permitted the plaintiffs to take water for such a long length of time through connection with the six-inch main in Tract A after it has passed through the master meter, it is now estopped to discontinue such service.

■■ It is well established that a municipality is under no duty to furnish a water supply to nonresidents in the absence of contractual relationship obligating it so to do. (John S. Gage v. Village of Wilmette, 315 Ill. 328, affirming Gage v. Village of Wilmette, 233 Ill. App. 123; Mary B. Gage et al. v. Village of Wilmette, 233 Ill. App. 30; Childs v. City of Columbia, 87 S. C. 566, 571; Fulghum v. Town of Selma, 238 N. C. 100.)

In the Wilmette case, reported in 233 Ill. App. 30, the complaint alleged that the plaintiffs, in 1911, applied to the village to extend its water main so as to supply water to plaintiffs' premises which are partly within and partly without the corporate limits of the village; that the village did so, and in 1914 the plaintiffs again applied to the village to extend its water supply by connecting its water main in Sheridan Road with a certain six-inch water main then proposed to be laid by plaintiffs immediately north of and adjoining said village; that the village consented to do so and actively co-operated in locating the necessary connections, which connections, including a manhole containing a shut-off valve, were made and paid for by the plaintiffs. It was further alleged that the plaintiffs' buildings and lots were supplied with water through this extension, the meters being read by the village,

the extension mains being repaired by the village, and the plaintiffs' payments for water being made directly to the village. It was then charged that after eleven years of such water service, the village shut off the plaintiffs' water supply through a valve inserted in a manhole installed by the plaintiffs but located in a public road. The prayer of the complaint was that the village be restrained from shutting off plaintiffs' water supply. The complaint further charged unfair discrimination against the plaintiffs in furnishing water to others outside of the village limits and alleged that either an express or implied contract existed by virtue of the village's conduct, alleged that the village was estopped from shutting off the water, and alleged damage to their property and trespass on their property by the village in shutting off the water by the valve in the manhole in the public road. A demurrer to the complaint was sustained and the complaint dismissed. In affirming the decree of the superior court, the Appellate Court said that no definite binding contract was made for the reason that where no definite time is fixed during which an executory contract shall remain in force, it is terminable at the will of either party. As to the eleven years' course of conduct between the plaintiffs and the village, the court said this was "not enough to establish a binding obligation on the part of the Village of Wilmette to furnish water indefinitely to the complainants, as owners of outside property." The court further said (p. 41): "By innuendo, at least, it is suggested for the complainants that, as they made some pipe connections, and then for a long time were furnished water, there arose, apart from the question of contract, something in the nature of an equitable estoppel. We do not think, however, that what was done by the complainants was sufficiently substantial to lead to the conclusion that the Village of Wilmette ought in equity to be bound for all time. . . . The allegations that the Village of Wilmette and

450

its officers unfairly discriminated against the complainants, seem to be immaterial. The rights of the complainants, whatever they are, do not arise by reason of the defendant's dealings with other outsiders."

It was contended in Fulghum v. Town of Selma, 238 N. C. 100, by certain nonresidents of that town, that irrespective of any contractual obligations between any nonresidents and the town, that a municipality is under a duty to furnish a supply of water to such nonresidents. In that case, the municipality had entered into an agreement to supply the complaining parties with water, using water mains outside of the corporate limits which had been installed by the consumers as the means of furnishing the lots in question with water. The municipality terminated the plaintiffs' water supply. The Supreme Court of North Carolina upheld the right of the city to make such termination and said (p. 104): "A municipality which operates its own water works is under no duty in the first instance to furnish water to persons outside of its limits. It has the discretionary power, however, to engage in this undertaking. . . . When a municipality exercises this discretionary power, it does not assume the obligations of a public service corporation toward nonresident consumers."

Appellants assert that the city has interfered unjustifiably with their contractual relationship with Hayes and Reque, but we find no merit in this contention. Hayes and Reque had no right or claim to city water which they or either of them could assign or transfer to Morris, and Morris, who is plaintiffs' predecessor in title, had no right or claim to a water supply which he could assign to the plaintiffs, and plaintiffs, of course, could not improve their position by taking water from Morris when they had no right to do so insofar as the city was concerned. There is likewise no merit in appellants' contention that the city is estopped from now cutting off the supply of water to

451

the plaintiffs' subdivision after having permitted the plaintiffs to have water for an extended period of time. As the Supreme Court of Kentucky said in Davisworth v. City of Lexington, 311 Ky. 606: "Approaching the heart of our particular problem, we may ask: Where the City has permitted nonresidents to use its sewer system for a number of years, may it require them to discontinue such use? The query is answered by posing a counter question: Why not? The City's essential duties are owed to its inhabitants. Non-residents have no lawful claim upon any city service. . . . The fact that appellants have spent substantial sums of money to connect with the city system creates no right to a continuance of the privilege. Such expenditures were purely voluntary, and were not induced by affirmative action on the part of the City. Appellants assumed the risk that the City might be unable to continue this service or might find it expedient to increase substantially its charges." It is our conclusion that appellee, city, in the instant case, was under no obligation, contractual or otherwise, to continue to furnish water to the plaintiffs in the expansion and promotion of their subdivision.

Finally, it is contended that the city was guilty of a trespass against the plaintiffs in entering upon a public street and shutting off the valve and thus terminating plaintiffs' water supply. The plaintiffs allege in the complaint that the valve which the city turned off was the property of the plaintiffs, and they also allege in their complaint the valve was located in a public street, which public street was not within the plaintiffs' subdivision. The allegation that the valve was located in a public street overcomes the allegation that it was the property of the plaintiffs, and the inference, therefore, arises from such allegation that the plaintiffs were not the owners or in possession of the valve which the city shut off. (Gage v. Village of Wil-

mette, 315 Ill. 328, 331.) The city committed no trespass against appellants.

The decree of the trial court is affirmed.

Decree affirmed.