93 So.2d 371 (1957)
STATE of Florida, Appellant,
v.
CITY OF MELBOURNE, Appellee.
Supreme Court of Florida, Special Division A.
March 6, 1957.
Murray W. Overstreet, Kissimmee, for appellant.
W.J. Vaughn, Melbourne, and Mitchell, Pershing, Shetterly & Mitchell, New York City, for appellee.
TERRELL, Chief Justice.
This appeal is from a decree of the Circuit Court of Brevard County validating an *372 issue of Water and Sewer Revenue Bonds, Series A, of the City of Melbourne, Florida, which will hereinafter be referred to as the "City". Said bonds were dated November 1, 1956. There is no controversy about the facts out of which the case emerged or the issues presented. It is admitted that the City has outstanding utilities revenue bonds dated November 1, 1952, in the sum of $563,000, which mature serially and are not subject to redemption until November 1, 1962.
It is first contended that the City is without legal authority to issue bonds to refund said outstanding utilities revenue bonds which are not subject to redemption until November 1, 1962.
It is shown and admitted that said utilities revenue bonds are subject to redemption, in whole or in part, at the option of the City prior to their respective maturities on November 1, 1962, for the principal of the bonds and accrued interest, at the date of redemption, plus a premium of 3% of the principal amount. Resolution 644, authorizing the issue of said Water and Sewer Revenue Bonds, Series A, shows that part of the proceeds are to be used for retiring all of the outstanding utilities revenue bonds in the sum of $563,000. In our view State v. Orlando, Fla., 82 So.2d 874, concludes this question against the contention of appellant. It is pointed out by appellant that the bonds subject to redemption in the last cited case were not due for two or three years while the bonds in question are not subject to redemption for five years, hence the Orlando decision is not decisive of the question raised in this case. We think there is no merit to this contention. Saving to the City was the primary element that actuated the Orlando decision and being so the philosophy of that case would be all the more applicable in the case at bar.
It is next contended that the City of Melbourne was devoid of lawful authority to construct and extend its water distribution facilities to within the corporate limits of the towns of Indialantic and Melbourne Beach and charge the subscribers within and outside said towns a higher rate for water than it charges those within the corporate limits of the City of Melbourne.
The answer to this question is concluded against the contention of appellant by Section 6, Charter of the City of Melbourne, Section 169.02, Florida Statutes 1955, F.S.A., and Section 159.03, Revenue Bond Act of 1953, F.S.A. See also Section 359, Charter of the City of Melbourne. These provisions specifically authorize the City to construct and operate waterworks within or without the City and Section 40 of the City Charter authorizes the City Council, without limitation, to fix the rates and charges for water and other public utilities wherever located. In his final decree validating the bonds the chancellor found that the proposed additions to the City's water and sewer facilities were very much needed to preserve the health, convenience and sanitary condition of the City. He further found that the towns of Indialantic and Melbourne Beach had no public facilities for supplying water, that the existing private facilities were inadequate for present needs, that the needs of said towns were closely related to the economy of the City and that the project of enlarging its water and sewer facilities had been studied and approved by a competent consulting engineer.
Courts in this country have generally held that when a municipality provides public services beyond its corporate limits the rates charged for them may be fixed by contract, as was done here, in the absence of forbidding statute. Davisworth v. City of Lexington, 311 Ky. 606, 224 S.W.2d 649; Messenheimer v. Windt, 211 Ga. 575, 87 S.E.2d 402; City of Moultrie v. Burgess, 212 Ga. 22, 90 S.E.2d 1; Guth v. City of Staples, 183 Minn. 552, 237 N.W. 411; City of Englewood v. City and County of Denver, 123 Colo. 290, 299 P.2d 667; Fulghum v. Town of Selma, 238 N.C. 100, 76 S.E.2d 368; City of Montgomery v. Greene, 180 *373 Ala. 322, 60 So. 900; City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622; Botkin v. City of Abilene, Tex.Civ.App., 262 S.W.2d 732. The last two cases deal with question of fixing utility rates as between residents and non-residents of the city.
The concluding question is whether or not the construction of water distribution facilities within the corporate limits of the towns of Indialantic and Melbourne Beach deny due process and equal protection of the laws to the residents of the City of Melbourne in violation of Sections 1 and 12, Declaration of Rights, Constitution of Florida, F.S.A.
At the outset it may be pointed out that the bonds in question are not obligations of the City of Melbourne, neither are they secured by any pledge of the taxing power of the City. They are not secured by lien of any kind on the physical property of the City but are supported entirely by a pledge of a certain portion of the utilities service tax for distributing water to the inhabitants of the City and the inhabitants of Indialantic and Melbourne Beach who subscribe for the water. It is shown that the City is the center of a large and growing metropolitan population, a part of which is the population of Indialantic and Melbourne Beach who pay a charge for water commensurate with the cost of delivery to them. The evidence shows that the delivery of water to customers outside the City will result in no increase of cost to residents of the City. The water system is owned by the City and the cost of maintenance is supported solely by pledge of the utilities service tax. It is not required that such pledge be approved by a vote of the freeholders as required by Section 6, Article IX, Constitution of Florida. State v. City of Fort Lauderdale, Fla., 60 So.2d 32; State v. City of North Miami, Fla., 89 So.2d 8; State v. City of Bartow, Fla., 48 So.2d 747; State v. City of Pensacola, Fla., 40 So.2d 569.
It is accordingly our view that the construction of water distribution facilities within the corporate limits of Indialantic and Melbourne Beach does not deny due process and equal protection to the residents of the City of Melbourne in violation of Sections 1 and 12, Declaration of Rights, Constitution of Florida.
The decree appealed from is accordingly affirmed.
Affirmed.
ROBERTS, DREW and THORNAL, JJ., concur.