FLEX-O-GLASS, INC., *et al.*, Plaintiffs-Appellants, v. THE CITY OF DIXON, Defendant-Appellee.

Second District   No. 2—98—1545

Opinion filed October 1, 1999.—Rehearing denied November 4, 1999.

Alan W. Cargerman, of Fearer, Nye, Ahlberg & Chadwick, of Oregon, for appellants.

Thomas L. Sanders, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiffs, Flex-O-Glass, Inc., and Amcore Investment Group, N.A. (Amcore), appeal from the September 4, 1998, order of the circuit court of Lee County dismissing their complaint for declaratory judgment. In their complaint, the plaintiffs sought a declaration that the defendant, City of Dixon (City), was obligated to continue to provide sewer service to Flex-O-Glass's manufacturing plant, which was located outside the City's boundaries. The plaintiffs also sought an injunction preventing the City from terminating sewer service. The trial court dismissed the action, finding that the City had no duty to provide utility services to a nonresident. We affirm.

The plaintiffs' complaint alleges the following facts. Since 1971, Flex-O-Glass has operated a large manufacturing plant on a piece of property outside the City's corporate limits. Amcore is the owner of the real property as the designated trustee under the provisions of a trust agreement executed on December 20, 1971. Although the complaint fails to indicate the precise size of the property, the complaint does indicate that the property is larger than 10 acres.

From 1971 until the present, the City has supplied water and sewer service to Flex-O-Glass's manufacturing plant. Flex-O-Glass has paid the City for these services according to the City's rate schedule for nonresident customers. Since 1971, Flex-O-Glass has paid the City an amount in excess of $20,000 for water and sewer service. During this same period, Flex-O-Glass has expended over $1 million in the establishment and improvement of the manufacturing facilities at the plant.

■ Since Flex-O-Glass commenced operations at the plant, the City has sought to annex the property. However, under section 7—1—2(a) of the Illinois Municipal Code (65 ILCS 5/7—1—2(a) (West 1998)), involuntary annexation proceedings on tracts in excess of 10 acres can be commenced only if the tract has been subdivided into lots or blocks or if the tract is bounded on at least three sides by lands subdivided into lots or blocks. Because the instant property has not been subdivided and is not bound on at least three sides by subdivided lands, the City cannot pursue annexation without the plaintiffs' consent. See 65 ILCS 5/7—1—2(a) (West 1998). Despite the City's repeated requests, the plaintiffs have refused to give their consent to annexation.

On July 6, 1981, the City enacted Ordinance No. 1094 relating to the provision of sewer service to nonresidents. This ordinance was codified as section 3—15—2 of the City's municipal code (Dixon Municipal Code § 3—15—2 (eff. July 6, 1981)) and provided as follows:

"CONNECTION RESTRICTION: No hook up shall be allowed

outside the corporate limits except where annexation is legally impossible. The property must be annexed immediately when possible. Connection to the public sewerage system of the City by a user located outside the corporate limits of the City shall be allowed only under the following conditions:

(A) The user is unable to annex to the City because the user's territory is not adjacent or contiguous to the City;

(B) The user agrees in writing to petition the City for annexation to the City when its territory becomes adjacent and contiguous to the City ***."

Following the passage of this ordinance, the plaintiffs continued to refuse to give their consent to be annexed into the City. Despite this refusal, the City continued to provide water and sewer services to the plant without interruption.

On July 30, 1990, the City filed suit against the plaintiffs in the circuit court of Lee County. City of Dixon v. Flex-O-Glass, Inc., No. 90—MC—1 (Cir. Ct. Lee Co.). The suit sought to compel the annexation of the plaintiffs' property. Alternatively, the City sought an order that it was no longer obligated to provide water and sewer services to the premises. On October 9, 1990, the plaintiffs answered the complaint, reasserting their right not to be annexed under section 7—1—2(a) of the Illinois Municipal Code. The City apparently chose not to pursue the litigation, and the case was dismissed for want of prosecution on August 22, 1994. During the pendency of this suit, the City continued to provide water and sewer service to the property.

On March 23, 1998, the City sent Flex-O-Glass written notice indicating its intention to terminate sewer service to the premises on April 10, 1998. In its written notice, the City explained that Flex-O-Glass was in violation of section 3—15—2 of the Dixon Municipal Code because it had "not yet petitioned for annexation of [its] property to the City." On April 7, 1998, Flex-O-Glass sent a written objection to the City, indicating that it did not intend to consent to annexation.

On April 8, 1998, the plaintiffs filed a complaint for declaratory judgment. In their complaint, the plaintiffs alleged that the threatened termination of sewer service was an unlawful attempt by the City to coerce annexation. The plaintiffs alleged that the termination of sewer service would also constitute an unconstitutional "discriminatory violation of the [City's] duty to fairly provide such essential services to nonresident property owners." The plaintiffs also alleged that the City was estopped from enforcing section 3—15—2 of the Dixon Municipal Code because the plaintiffs had expended substantial funds for capital improvements to the plant in reliance upon the City's forbearance in

enforcing the ordinance for the previous 18 years. The plaintiffs requested a declaration that the City's enforcement of the ordinance would be "arbitrary and capricious" and otherwise unlawful. The plaintiffs also sought the entry of an injunction enjoining the City from terminating sewer service.

On May 11, 1998, the parties entered into a written stipulation waiving any and all administrative remedies available under the Dixon Municipal Code. The parties also agreed that the City would not terminate utility service to the plaintiffs' property while the case remained pending.

On May 29, 1998, the City filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)). In its motion, the City argued that the plaintiffs' complaint failed to state a cause of action. The City argued that it was under no obligation to supply nonresidents with utility services in the absence of a specific contractual undertaking to do so.

On September 4, 1998, the trial court filed a written memorandum decision granting the City's motion to dismiss. In reliance upon *Gage v. Village of Wilmette*, 315 Ill. 328 (1924), and *Rehm v. City of Batavia*, 5 Ill. App. 2d 442 (1955), the trial court ruled that, absent a contractual relationship, the City was under no duty to provide utility service to the plaintiffs. Noting that there was no written agreement between the parties, the trial court ruled that the City could lawfully terminate the sewer service it was supplying to the plaintiffs. Although the trial court subsequently denied the plaintiffs' motion for reconsideration, the trial court entered an order preventing the City from terminating the plaintiffs' utility service pending an appeal from the September 4, 1998, order. The plaintiffs subsequently filed a timely notice of appeal.

The plaintiffs' sole argument on appeal is that the trial court erred in dismissing their complaint. The plaintiffs argue that, once a municipality has undertaken to provide utility service to nonresidents, it may not unjustly discriminate in terminating those services. The plaintiffs note that they had already been "hooked-up" to the City's sewer system for almost a decade before the City adopted the ordinance mandating annexation. Thereafter, the City continued to supply sewer service while Flex-O-Glass made substantial capital improvements to its manufacturing plant. The plaintiffs argue that the City's decision to now enforce its ordinance is arbitrary and an unlawful attempt to coerce their consent to annexation.

■ Because the plaintiffs' complaint was dismissed pursuant to a section 2—615 motion, the question before this court is whether the complaint sets forth a cause of action upon which relief can be granted.

*Ag Farms, Inc. v. American Premier Underwriters, Inc.,* 296 Ill. App. 3d 684, 689 (1998). The test of sufficiency of a declaratory judgment action is whether the complaint alleges facts showing an actual or justiciable controversy between the parties and prays for a declaration of rights and other legal relations of the parties. *Ag Farms,* 296 Ill. App. 3d at 689. Since the question is one of law, our review is *de novo. Ag Farms,* 296 Ill. App. 3d at 688. In conducting that review, we are required to take all well-pleaded facts in the complaint as true and draw reasonable inferences from those facts that are favorable to the plaintiff. *Ziemba v. Mierzwa,* 142 Ill. 2d 42, 46-47 (1991). An action should not be dismissed on the pleadings unless it is apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Illinois Graphics Co. v. Nickum,* 159 Ill. 2d 469, 488 (1994).

In its memorandum opinion, the trial court found that *Gage v. Village of Wilmette,* 315 Ill. 328 (1924), and *Rehm v. City of Batavia,* 5 Ill. App. 2d 442 (1955), were analogous to the instant case. In *Gage,* the Village of Wilmette supplied water service to several nonresident cottages for a period of seven years. During this time, the village installed, repaired, and maintained the water mains leading to the cottages. The village then terminated the supply of water to the cottages. The nonresident property owners filed suit in an attempt to require the village to resume service. *Gage,* 315 Ill. at 329-30. They argued that, because the village had sold and distributed water to them for many years, it had assumed the position of a public utility and was estopped from shutting off the water. See *Gage,* 315 Ill. at 329-30. The trial court dismissed the complaint, finding that it failed to state a cause of action. *Gage,* 315 Ill. at 329.

On review, our supreme court affirmed the dismissal of the action. *Gage,* 315 Ill. at 331. The court held that, absent a contractual obligation to provide utilities for a fixed period of time, the village had the right to terminate services at any time. *Gage,* 315 Ill. at 331. Although the complaint in *Gage* alleged the existence of an express or implied contract between the nonresidents and the village for the supply of water, the complaint did not indicate how long the contract was to continue in force. The court therefore held that any contract that existed between the parties was terminable at the will of either party. *Gage,* 315 Ill. at 331.

In *Rehm v. City of Batavia,* 5 Ill. App. 2d 442 (1955), this court also considered whether a municipality owed a duty to supply utility services to nonresidents. In that case, the owners of a subdivision brought suit against the City of Batavia for injunctive relief and damages after the city terminated water service to their property, which was located outside the corporate boundaries. *Rehm,* 5 Ill. App. 2d at

443-45. The subdivision was located in between the city and another, more remote, piece of property that was also receiving water from the city. *Rehm*, 5 Ill. App. 2d at 444.

At great expense, the owners of the subdivision had laid a public street and a water main to connect with the city's existing main that traveled to the more remote property. *Rehm*, 5 Ill. App. 2d at 444-45. A majority of the property owners also purchased meters to measure the water usage from the city's water department. *Rehm*, 5 Ill. App. 2d at 445. The city provided water service to the subdivision for five years prior to the termination. *Rehm*, 5 Ill. App. 2d at 445. In their complaint, the property owners alleged that the city was estopped from terminating service. *Rehm*, 5 Ill. App. 2d at 449. The trial court dismissed the complaint, finding that it failed to state a cause of action. *Rehm*, 5 Ill. App. 2d at 446.

■ On review, this court relied on *Gage* and held that the city had no duty to furnish a water supply to the subdivision absent a contract obligating it to do so. *Rehm*, 5 Ill. App. 2d at 449. We also rejected the property owner's estoppel argument, holding that the providing of prior service did not establish a binding obligation on the municipality to provide water indefinitely. *Rehm*, 5 Ill. App. 2d at 451-52. We further noted:

> " 'The [c]ity's essential duties are owed to its inhabitants. Nonresidents have no lawful claim on any city service.... The fact that appellants have spent substantial sums of money to connect with the city system creates no right to a continuance of the privilege. Such expenditures were purely voluntary, and were not induced by affirmative action on the part of the [c]ity. Appellants assumed the risk that the [c]ity might be unable to continue this service or might find it expedient to increase substantially its charges.' " *Rehm*, 5 Ill. App. 2d at 452, quoting *Davisworth v. City of Lexington*, 311 Ky. 606, 610, 224 S.W.2d 649, 651 (1949).

Due to a lack of a contractual obligation requiring the village to continue to supply water service, we concluded that the village was under no obligation to do so. *Rehm*, 5 Ill. App. 2d at 452.

The principles articulated in *Rehm* have been recognized and applied by other Illinois courts. See *Amalgamated Trust & Savings Bank v. Village of Glenview*, 98 Ill. App. 3d 254, 261-62 (1981) (village not obligated to supply water to property outside municipal boundary despite the fact that property was developed in reliance upon the village's water service); *Exchange National Bank v. Behrel*, 9 Ill. App. 3d 338, 340, 342 (1972) (absent contractual obligation, city not obligated to provide water service to nonresident after the nonresident refused to agree to annexation); *Adkisson v. Ozment*, 55 Ill. App. 3d 108, 114

(1977) (absent a written contract with a specified termination date, city could increase rates for water service to nonresidents).

The plaintiffs herein suggest that we reject these authorities and instead follow the holding in *Schroeder v. City of Grayville*, 166 Ill. App. 3d 814 (1988). In that case, the Illinois Appellate Court, Fifth District, held that a trial court erred in dismissing a complaint alleging that a municipality had unlawfully terminated water service to several nonresidents in retaliation for their refusal to grant an easement to the municipality. *Schroeder*, 166 Ill. App. 3d at 818. The plaintiffs in *Schroeder* alleged that the municipality's conduct was discriminatory because it denied them water service that had been supplied to other nonresidents who were similarly situated. *Schroeder*, 166 Ill. App. 3d at 816. The *Schroder* court held that, although a municipality is not obligated to serve nonresidents in the absence of a contractual relationship, it is prohibited from discriminating unreasonably in rates or manner of service when it elects to serve nonresidents. *Schroeder*, 166 Ill. App. 3d at 817; see 220 ILCS 5/9—101 (West 1998). In so holding, the *Schroeder* court indicated that it was "refus[ing] to apply the reasoning of *Rehm*." *Schroeder*, 166 Ill. App. 3d at 818.

We agree with the principle expressed in *Schroeder* that, where a municipality has undertaken to provide service to similarly situated nonresident customers, it cannot discriminate unreasonably in its rates and service to these customers. As correctly noted in *Schroeder*, a municipality's decision to terminate utility service to one nonresident while continuing utility service to other similarly situated nonresidents would be discriminatory as a matter of law. *Schroeder*, 166 Ill. App. 3d at 817-18.

However, we do not agree with the plaintiffs' assertion that the holding in *Schroeder* requires an abandonment of the general principles articulated in *Rehm* and the other authorities outlined above. We find nothing in *Schroeder* that abrogates the traditional rule that a municipality owes no initial or continuing duty to supply utilities to nonresidents absent a contractual relationship. Indeed, we note that the *Schroeder* court specifically acknowledged this precise principle of law. *Schroeder*, 166 Ill. App. 3d at 817. We therefore do not read *Schroeder* as imposing a duty upon municipalities to continue to provide utility service to nonresidents once that service has begun. Rather, we believe that *Schroeder* simply requires that a municipality act in a uniform and fair manner when making utility service decisions concerning similarly situated nonresident customers.

■ Turning to the instant case, we do not believe that the plaintiffs' complaint states a claim upon which relief can be granted. Unlike *Schroeder*, the complaint contains no allegation that the

plaintiffs are being treated differently from other similarly situated nonresident utility customers. Instead, the plaintiffs allege that the City should be estopped from terminating sewer service due to its failure to diligently enforce section 3—15—2 of the Dixon Municipal Code. The plaintiffs allege that they relied on this nonenforcement and made significant capital improvements to their manufacturing facility on the property. As detailed above, lacking a contractual agreement to continue to provide such services, the City has no duty to continue to provide utility service regardless of the length of previous service. See *Gage*, 315 Ill. at 331; *Rehm*, 5 Ill. App. 2d at 452. Nor is the City estopped from discontinuing sewer service simply because Flex-O-Glass has made large capital expenditures in reliance upon the anticipated continuation of that service. See *Rehm*, 5 Ill. App. 2d at 452.

The plaintiffs assert that the City's motivation in terminating service is to coerce them into giving their consent to annexation. The plaintiffs contend that this is an unlawful attempt to coerce the waiver of their right under section 7—1—2(a) of the Illinois Municipal Code not to be annexed. However, regardless of the characterization of the City's motivation, the plaintiffs must nonetheless allege some type of unlawful discrimination that would bring the case within the holding in *Schroeder*. Absent an allegation that the City treated the plaintiffs differently from other similarly situated nonresidents, the plaintiffs' complaint fails to state a cause of action and was properly dismissed by the trial court.

For the foregoing reasons, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

McLAREN and RAPP, JJ., concur.