FOREST CITY, Missouri, a Municipal
Corporation, Appellant,

v.

CITY OF OREGON, Missouri, a Munici-
pal Corporation, Respondent.

No. KCD 29559.

Missouri Court of Appeals,
Kansas City District.

July 3, 1978.

Motion for Rehearing and/or Transfer
Denied July 31, 1978.

Application to Transfer Denied
Sept. 12, 1978.

Theodore M. Kranitz, St. Joseph, for appellant.

Rupert G. Usrey, Oregon, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Forest City filed suit against the City of Oregon in three counts. The first two counts sought equitable relief against an increase in water rates, while the third count sought condemnation of certain fire hydrants. The trial court sustained a motion to dismiss as to the first two,[1] and ruled that judgment separate and final for purposes of appeal. Forest City appeals

1. The judgment considered not only the pleadings filed but also "the stipulations and agreements of counsel entered into at the pretrial conference" and the court found that Counts I and II "fail to state a claim upon which relief can be granted and that there is no genuine issue as to any material fact alleged in these counts of plaintiff's petition." The judgment therefore appears to have been as much in the nature of a summary judgment under Rule 74.-04 as it does a judgment sustaining motion to dismiss.

2. Forest City makes no effort in this case to enforce the "contract" dated January 26, 1898,

from that judgment. Counsel for Oregon have filed no brief nor made any appearance in this court, thereby increasing the difficulty of dealing with this appeal. We nevertheless affirm.

The parties have stipulated as to the facts. On January 26, 1898, Oregon, through appointed agents, and Forest City, through an appointed committee, entered into what purported to be a contract[2] providing for Oregon to erect a waterworks within the town limits of Forest City (under which lies a supply of underground water) to supply water to both cities and their respective inhabitants. Forest City supplied the site and $800 for the enterprise, and Oregon assumed the balance of all expense. Under the agreement, Oregon undertook "to furnish said Town of Forest City water at reasonable rates and to furnish water to its inhabitants at the same rates and on the same terms as water is hereafter by said City of Oregon furnished to the inhabitants of the City of Oregon."

In 1954, Oregon abandoned the original waterworks site and constructed a new one at a different site within the limits of Forest City entirely at the expense of the residents of Oregon, who floated a general obligation bond issue for that purpose. At all times from 1898 until 1976, Oregon continuously supplied water to the inhabitants of Forest City at the same rate that water was supplied to the inhabitants of Oregon.

However, on May 12, 1976, Oregon adopted Ordinance No. 125 which established a water rate for nonresidents higher than that to be charged residents.[3] Forest City protested the adoption of the new rates,

as such. In its petition it states that the validity and enforceability of that instrument as a contract "is not an issue in this case."

3. Residents of Oregon were to be charged a minimum of $3.15 for the first 1000 gallons, $1.65 for the next 2000 gallons, $1.40 for the next 3000 gallons and $1.15 for all water in excess of 6000 gallons.

Nonresidents were to be charged a minimum of $3.65 for the first 1000 gallons, $2.15 for the next 2000 gallons, $1.90 for the next 3000 gallons and $1.65 for all water in excess of 6000 gallons.

and an approach of some undisclosed character was made to the Missouri Public Service Commission. The stipulation of facts states that "the parties have been informed by the Missouri Public Service Commission that, in the opinion of the Commission, it has no jurisdiction over the regulation of rates charged by the City of Oregon for water sold to residents of the City of Forest City * * * Counsel for the parties have been informed by the Public Service Commission of Missouri that it will assume jurisdiction of the dispute if requested to do so by the City of Oregon." Oregon has declined to make such a request to the Commission.

For its first point on this appeal, Forest City contends that the trial court erred in dismissing Counts I and II of the petition for the reasons "more specifically outlined in Points II and III hereof." Its Point II contends that Count I of the petition stated a cause of action "in asking the trial court in the exercise of its equitable powers, to pass on the legality of the proposed water rate increase; or on the necessity for it; or on any other aspect of the proposed increase, including the question of whether or not the rate classification and disparity which defendant seeks to establish in its ordinance is reasonable." Its Point III contends that Count II of the petition stated a cause of action "in asking the trial court in the exercise of its equitable powers to transfer the cause to the Public Service Commission, or to compel defendant to request the Commission to assume jurisdiction."

The first of Forest City's points serves only as an introduction to the other two points and states no independent ground of review. Therefore, only Points II and III need be discussed. They will be taken up in reverse order.

## I.

### Jurisdiction of the Public Service Commission

In the argument portion of its brief, Forest City suggests that the Commission does have statutory authority to pass upon and regulate the water rates charged by Oregon to the residents of Forest City. It errs in that suggestion.

The 1913 original Public Service Commission Act did grant to the Commission specific power to regulate rates and services of municipally operated public utilities. That authority was thereafter somewhat narrowed by a 1917 amendment which limited the Commission to jurisdiction of such rates to only those rates charged for water used beyond the corporate limits of the municipality.[4]

Pursuant to these statutory provisions, the Missouri Supreme Court initially considered that the Commission had the power to regulate water rates charged by municipal corporations sold beyond its borders. *Public Service Commission v. City of Kirkwood*, 319 Mo. 562, 4 S.W.2d 773 (1928); *Speas v. Kansas City*, 329 Mo. 184, 44 S.W.2d 108 (1931). However, the Supreme Court subsequently ruled that the statutory grant of power to the Commission to regulate municipally owned public utilities was unconstitutional. *City of Columbia v. State Public Service Commission*, 329 Mo. 38, 43 S.W.2d 813 (1931); *State ex rel. Union Electric Light & Power Co. v. Public Service Commission*, 333 Mo. 426, 62 S.W.2d

---

4. The 1917 amendment still remains as presently numbered Section 386.250(7) which grants jurisdiction to the Public Service Commission as follows:

"The jurisdiction, supervision, powers and duties of the public service commission herein created and established shall extend under this chapter:

    *      *      *      *      *      *

(7) To all water corporations, and to the land, property, dams, water supplies, or power stations thereof and the operation of same within this state; provided, that nothing contained in this section shall be construed as conferring jurisdiction upon the public service commission over the service or rates of any municipally owned water plant or system in any city of this state, except where such service or rates are for water to be furnished or used beyond the corporate limits of such municipality."

All statutory references in this opinion are to RSMo 1969, unless otherwise specifically noted.

742 (1933); *State ex rel. City of Sikeston v. Public Service Commission of Missouri*, 336 Mo. 985, 82 S.W.2d 105 (1935).

This series of opinions left some doubt as to the status of the Commission's authority concerning any regulation of municipally owned utilities. This problem was directly addressed by the legislature by its 1949 statutory revision. At that time the sections defining the powers of the Commission were changed to delete authority for jurisdiction over municipal utilities.[5]

Notwithstanding the 1949 revisions just mentioned, Section 386.250(7) was left on the statute books intact. Two administrative legal opinions have been rendered, both concurring in the opinion that Section 386.250(7) is not effective alone to confer any power upon the Commission to regulate municipal utility rates, even with respect to water sold beyond the corporate limits. Opinion of the Attorney General No. 6 dated April 27, 1967; Opinion of the General Counsel, Missouri Public Service Commission, No. 73–1 dated May 22, 1973. The conclusions reached in those opinions, in the light of the legislative and judicial history just outlined, are logical and convincing. We adopt those conclusions and hold that the Missouri Public Service Commission does not have jurisdiction to regulate the rates charged by Oregon to the City or residents of Forest City.[6] This alone prevented the trial court from acceding to Forest City's request that this case be transferred to the Commission.

■ As an alternative approach, Forest City argues that the Commission will take jurisdiction if so requested by Oregon, and Forest City urges that this court order Oregon to make such a request. The question immediately suggests itself whether the Commission could properly assume jurisdiction purely on consent of the parties, absent statutory authority.[7] Passing that question, Forest City cites no law or any appropriate theory upon which a court could make an order upon Oregon to request or consent to jurisdiction by the Commission, and we perceive no valid theory upon which this could be done.

Forest City further suggests that the trial court could have appointed the Commission and referred this rate matter to it as a master under Rule 68.01. Aside from other questions, such action by the trial court would depend upon a showing of some authority in it to assume independent jurisdiction over this rate matter. This leads directly to a discussion of Forest City's other Point on Appeal.

## II.

### *The Alleged Independent Judicial Jurisdiction to Review Reasonableness of the New Rates*

■ Where, as is the situation here, no administrative body has jurisdiction of the rate regulation, the courts do have an equitable jurisdiction to prevent a municipality from enforcing public utility charges which are clearly, palpably and grossly unreasonable. 64 Am.Jur.2d, Public Utilities, Section 128, p. 654; *City of Mt. Vernon v. Banks*, 380 S.W.2d 268 (Ky.1964); *American Aniline Products v. City of Lock Haven*, 288 Pa. 420, 135 A. 726 (1927).

---

5. See revision comment to Section 393.130 which reads as follows:

 "As originally enacted, sections 5645, 5646, 5647, 5648 and 5659, R.S.1939, empowered the Public Service Commission to regulate municipally owned and operated utilities. However, in *City of Columbia v. Public Service Commission*, 329 Mo. 38, 43 S.W.2d 813, the Supreme Court ruled that the Commission did not have such power. Therefore these sections were repealed and reenacted as this section and Sections 393.140 to 393.160 omitting the reference to municipal utilities."

6. This interpretation also serves to avoid conflict with Sections 91.050 and 91.060 which are discussed below in part II of this opinion.

7. The trial court commented colorfully on that question as follows: "I am not aware of any concept of law that permits *jurisdiction* to be conferred by consent of the litigants. It has always been my understanding that jurisdiction is to a tribunal what beauty is to a woman; either she has it or she doesn't, and the lack of it can nowise be supplied by agreement on its desirability."

**334**

That principle, however, applies only when the city is acting in the nature of a public utility. A considerable line of cases hold that a city does so only to the extent that it supplies the utility service to its own inhabitants, and that as to nonresidents, the municipality owes no duty of service, sells in purely private capacity on a purely contractual basis, and cannot be regulated as to the rates charged. 78 Am.Jur.2d, Waterworks and Water Companies, Section 6, p. 896; *Childs v. City of Columbia*, 87 S.C. 566, 70 S.E. 296 (1911); *City of Phoenix v. Kasun*, 54 Ariz. 470, 97 P.2d 210 (1939); *City of Colorado Springs v. Kitty Hawk Development Co.*, 154 Colo. 535, 392 P.2d 467 (banc 1964); *State of Florida v. City of Melbourne*, 93 So.2d 371 (Fla.1957); *Davisworth v. City of Lexington*, 311 Ky. 606, 224 S.W.2d 649 (1949); *Adkisson v. Ozment*, 55 Ill.App.3d 108, 12 Ill.Dec. 790, 370 N.E.2d 594 (1977); *Atlantic Construction Co. v. City of Raleigh*, 230 N.C. 365, 53 S.E.2d 165 (1949).

The philosophy of those cases has been adopted by the Missouri Legislature with respect to the sale of water by a municipality to nonresidents. Section 91.050 provides that any city may supply water from its waterworks to other municipal corporations for their use and the use of their inhabitants and "also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor, for such time, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties." Similarly, Section 91.060 provides that any city may supply any other city "upon such terms and under such rules and regulations as it may deem proper." By these statutory provisions, the Missouri General Assembly clearly has left the sale of water by a city to nonresidents as a matter of voluntary contract, free from regulation.

■ Even aside from that, a rate does not become unreasonable or discriminatory simply because a municipality charges more to nonresidents than it does to its own inhabitants. 78 Am.Jur.2d, Waterworks

and Water Companies, Section 6, p. 896; 64 Am.Jur.2d, Public Utilities, Section 120, p. 647; 94 C.J.S. Waters § 297b, p. 205; Annotation "Discrimination between property within and that outside municipality or other governmental district as to public service or utility rates," 4 A.L.R.2d 595, Section 4, l.c. 599; *Guth v. City of Staples*, 183 Minn. 552, 237 N.W. 411 (1931); *State of Florida v. City of Melbourne, supra*.

### III.

#### Other Unpreserved Argument

■ It must be repeated that Forest City makes no effort to enforce the contract of January 26, 1898, as such. However, in the argument portion of its brief, it speaks of the long-continued performance under the 1898 agreement as having acquired "the force of law" through operation of custom and usage. This argument is not within the scope of the Points Relied Upon, and therefore has not been properly presented for consideration. Rule 84.04(d). Nevertheless, it can be answered briefly that custom and usage can be effective only to help interpret a contract, not to create a contract. *State ex inf. Crow v. Atchison, T. & S.F. Ry. Co.*, 176 Mo. 687, 75 S.W. 776, 780 (banc 1903); *State ex rel. Chicago, M. & St.P. Ry. Co. v. Public Service Commission of Missouri*, 269 Mo. 63, 189 S.W. 377 (banc 1916); *Leonard v. Dougherty*, 221 Mo.App. 1056, 296 S.W. 263 (1927); *Piper v. Allen*, 219 S.W. 98 (Mo.App.1920). Moreover, it has been held that nonresidents of a municipality can obtain no rights to perpetual continuance of a given rate for a municipally offered utility service simply by reason of the fact of long performance by both parties under a contract specifying no termination date. *Childs v. City of Columbia, supra* ; *Adkisson v. Ozment, supra*.

Affirmed.

All concur.