Dear Mr. Smith:
Prior to leaving office, your predecessor, Paul L. Bradshaw, requested an opinion on the questions below. This is our response.
Specifically, the two questions ask:
 1. Can a municipally-owned utility charge higher rates to customers residing outside the city's corporate limits than it does to customers residing inside its corporate limits if the cost of servicing all customers is the same?
 2. If the answer to #1 is No, can the municipally-owned utility charge a higher rate to customers residing outside the corporate limits if the cost of servicing those customers is greater? If so, must the higher rate be limited so as to only cover the additional expenses?
The opinion request sets forth the facts giving rise to these questions as follows:
 The City of Springfield purchased a private water company which serviced Springfield residents and customers living outside the corporate city limits. Thereafter the city acquired the right to supply gas from the existing supplier. Thereafter the city acquired the right to provide electricity and bus service; and now provides water, gas, electric, and bus service. The city operates these services by and through the Board of Public Utilities under the name of City Utilities of Springfield, Missouri.
 The city now does not provide any bus service, street lights, or fire hydrants to customers living outside the city limits. The city receives free electric, gas, and water service on all municipal buildings. The city does not provide sewer service to residents outside the city, but does not charge for the sewer service.
 Contractors developing land in the county are required to pay City Utilities the same cost for installing services as is charged contractors developing land within the city. [Emphasis in original.]
No information supplied to us shows the specific authority for the City of Springfield to supply utility services to nonresidents of the city. Accordingly, we cannot examine any limitations on the city's rate-making authority inherent in the authorization to provide utility services to nonresidents of the city, if such exist.[1]
In particular, no documentation has been presented showing that the city operates as a public utility with respect to its nonresidential customers.[2]
In Forest City v. City of Oregon, 569 S.W.2d 330 (Mo.App. 1978), the court refused to exercise its equitable jurisdiction to review the reasonableness of a nonresidential city water rate that was higher than the residential city water rate. The court noted that it had jurisdiction to regulate municipal utility rates when charges "are clearly, palpably and grossly unreasonable." 569 S.W.2d at 333. However, the court found that this jurisdiction "applies only when the city is acting in the nature of a public utility. A considerable line of cases hold that a city does so only to the extent that it supplies the utility service to its own inhabitants, and that as to nonresidents, the municipality owes no duty of service, sells in purely private capacity on a purely contractual basis, and cannot be regulated as to the rates charged." 569 S.W.2d at 334. The court went further by stating that even if the nonresidential rates could be regulated by the court, "a rate does not become unreasonable or discriminatory simply because a municipality charges more to nonresidents than it does to its own inhabitants." 569 S.W.2d at 334.
Therefore, we believe that unless the nonresidential customers of a municipal utility show (1) that the city acts as a public utility with regard to such nonresidential customers and (2) that the higher nonresidential city utility rates are not based on any reasonable distinction between residential and nonresidential customers, a court will not exercise its equitable jurisdiction to declare such higher nonresidential rates clearly, palpably and grossly unreasonable.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] The City of Springfield is a constitutional charter city, the general powers of which are governed by Missouri Constitution, Article VI, Section 19(a). See also Sections 91.010-91.040 and91.600, RSMo 1978. Cf. Missouri Public Service Co. v. City ofTrenton, 509 S.W.2d 770 (Mo.App. 1974); Taylor v. Dimmitt,336 Mo. 330, 78 S.W.2d 841 (1934) (which conclude that statutory class cities may not maintain certain utility "transmission facilities" outside their territorial boundaries). As stated, we have not examined the ordinances or charter of the City of Springfield to determine if there are limitations on the city's rate-making authority contained in these documents.
[2] In a letter dated February 2, 1983, F. Bennett Lilley, a Springfield, Missouri, attorney, submitted a letter to this office in which he stated that "because the County residents have no choice in their utility company, City Utilities is acting as a public utility in servicing those county residents." We believe that a court of law will require more of a factual showing than this bare assertion to show that the city acts as a utility with regard to its nonresidential customers, especially in light of the general rule that a city may discriminate in its utility rate structures between city residents and non-city residents, when there is some factual reason for that differentiation. See Annot., 4 A.L.R.2d, 595-612 (1949).