**AG PROCESSING, INC., Appellant,**

v.

**SOUTH ST. JOSEPH INDUSTRIAL SEWER DISTRICT,**
Respondent.

No. WD 51989.

Missouri Court of Appeals,
Western District.

Nov. 26, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1997.

Application to Transfer Denied
Feb. 25, 1997.

R. Dan Boulware, St. Joseph, for Appellant.

Keith W. Ferguson, St. Joseph, for Respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LOWENSTEIN, Judge.

This is an appeal from summary judgment entered by the circuit court of Buchanan county allowing the respondent, an industrial sewer district, to charge higher rates to the appellant, a contract user, for treatment of sewage generated outside the physical boundaries of the district even though the user also had property within the district and made capital contributions to the district. Appellant raises three points on appeal: that the sewer district lacked statutory authority to charge it higher rates for sewage treatment; that the statute purporting to grant the sewer district the power to charge higher rates violates due process in that it is unconstitutionally vague; and that the trial court improperly failed to exercise jurisdiction to review the rates under equitable principles.

### Facts

In 1984, AG Processing (AGP), owned a processing plant located in St. Joseph. In 1984, AGP contracted with the South St. Joseph Industrial Sewer District (the sewer district), a public sewer district governed by the provisions of Chapter 249 R.S.Mo., to obtain sewage treatment services. The contract provided that the sewer district would service AGP's property for a certain fee even though it was located *outside* the physical boundaries of the sewer district.

Several years later, in 1989, AGP obtained by assignment additional and separate property *inside* the district. This particular property was, at one time, owned by one of the original owners and creators of the sewer district. As a condition of the assignment, AGP assumed all the assignor's responsibilities as an owner, including the retirement of bond indebtedness agreements of the Sewer District. At this time, AGP became both an owner and a customer of the sewer district— a customer as to their land outside the district and an owner as to the new property located within the sewer district. There is *no claim* here regarding sewage treatment *charges* from AGP's property *within the district.* The sewer district only treated sewage generated by the AGP property outside the district.

AGP asserts it has been overcharged for sewage treatment service to AGP property located out of the district's boundaries. It contends, and the sewer district agrees, that "owners" of the sewer district, both original parties to the agreement creating the district and their successors in interest responsible for retiring bond indebtedness, are generally charged lower rates than non-owner customers. AGP argues that it was entitled to receive the preferred rate as of 1989, the date it acquired the property within the district and became "owner". Conversely, the sewer district maintains that AGP could receive the lower rate for any sewage generated by the property within the district but was still subject to the mutually contracted rate with regard to sewage produced by the out-of-district property.

The trial court made specific findings that "the rates charged to AGP were not in violation of §§ 249.777 and 249.785; that the rates charged were not unconstitutional as being in violation of due process; that the rates charged had a rational relationship to other customers similarly situated as AGP; that the rates charged have a legitimate purpose; and that the rates charged are not arbitrary and discriminatory."

## Standard of Review

The standard of review for summary judgement motions is essentially de novo and is conducted in the same manner as review of a court-tried case. The judgment will be sustained if any theory supports it. *Anderson v. Accurso,* 899 S.W.2d 938, 941 (Mo.App.1995). On appeal, this court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

## Constitutional Claim

The first matter to address is whether this court has jurisdiction over this appeal since the constitutionality of § 249.777(11), R.S.Mo 1994, is questioned by AGP. Generally, where a case involves the constitutional validity of a state statute, the court of appeals does not have jurisdiction of the appeal. Mo. Const. Art. V, sec. 3.

If a constitutional challenge is properly raised and if it is an issue of substance, and not merely colorable, jurisdiction rests with the Supreme Court of Missouri. In order to preserve a constitutional issue for review, it must be raised at the first available opportunity. *Duncan v. Missouri Bd. for Architects, Professional Engineers and Land Surveyors,* 744 S.W.2d 524, 531 (Mo.App. 1988) (citing *City of St. Louis v. Butler,* 358 Mo. 1221, 219 S.W.2d 372 (Mo. banc 1949)). When that opportunity arises depends on the facts and circumstances of each individual case. *Id.* (citing *Appeal of Mac Sales Co.,* 256 S.W.2d 783 (Mo.1953)). "The reason behind the 'first opportunity' rule is: A party may not wait until he has lost the case and then, in contravention of a statute and the Constitution itself and to the cluttering up and confusion of the Courts, pick and choose his appellate forum by a belated constitutional question dragged by its very heels into the case." *Id.* In this case, AGP did preserve the constitutional challenge to § 249.777(11) by raising it in the circuit court, but in raising the constitutional issue of the statute along with an issue as to the merits of the case, AGP does engage in forum shopping of sorts. AGP asserts to this court that its primary claim is one of statutory interpretation but, if we cannot find in their favor on those grounds, then the statute to be interpreted is unconstitutional. In short, the appellant wants to have its cake and eat it too. AGP desires this court to rule on the interpretation of the statutes at issue, and if finding against AGP, wants another shot on the constitutional grounds before our Supreme Court.

The mere assertion of a constitutional issue however, does not deprive the court of appeals of jurisdiction unless the constitutional issue is real and substantial, and not merely colorable. *State v. Prowell,* 834 S.W.2d 852, 854 (Mo.App.1992).

A claim is: "substantial when upon preliminary inquiry, the contention discloses a contested matter of right involving some fair doubt and reasonable room for controversy; but, if such preliminary inquiry discloses the contention is so obviously unsubstantial and inefficient, either in fact or law as to be plainly without merit and a mere pretense, the claim may be deemed merely colorable". *In re Estate of Potashnick,* 841 S.W.2d 714 (Mo.App.1992) (citing *Kansas City Star Co. v. Shields,* 771 S.W.2d 101, 103 (Mo.App.1989)).

The challenged statute, § 249.777 entitled, "Rights and Powers of District," grants a series of general powers. Subsection 11, the source of controversy here, reads, "A district may extend any such system, works or facilities and permit the use thereof by persons outside the district, so far as the capacity thereof is sufficient beyond the needs of the district, *upon such terms as the board may prescribe.*" § 249.777(11), RSMo 1994 [Emphasis added]. AGP challenges that statute as unconstitutionally vague in that it does not provide enough guidance to the sewer district in setting rates for outside users.

In order to avoid being unconstitutionally vague, a statute must define the proscribed conduct with sufficient definiteness that ordinary people can discern what acts are prohibited, and the offensive conduct must be defined in a manner which does not encourage arbitrary and discriminatory application. *Vetter v. King,* 691 S.W.2d 255

(Mo. banc 1985). The crux of AGP's claim is that § 249.777(11), enables the sewer district to set rates for sewage treatment in an arbitrary and discriminatory way.

This court finds the constitutional claim merely colorable, rules against AGP on this point, and retains jurisdiction to review this case for the following reasons: (1) counsel for AGP admits that the constitutional claim is secondary to the statutory interpretation claim and that is why they filed the case with this court originally; (2) the rates charged to AGP by the sewer district are a matter of contract between the parties and therefore cannot be arbitrary or discriminatory in that AGP could simply refuse to contract with the sewer district.

Furthermore, in *Forest City v. City of Oregon,* 569 S.W.2d 330 (Mo.App.1978), this court interpreted a similar statute involving a water district. Referencing the applicable statutes, this court held that "the sale of water by a city to nonresidents is a matter of voluntary contract, free from regulation." *Id.* at 334. Specifically, § 91.050, RSMo.1994 provides that any city may "supply water from its waterworks to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor, for such time, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties." Section 91.060 RSMo.1994, further provides that any city may supply water to any other city "*upon such terms and under such rules and regulations as it may deem proper.*" [Emphasis added]

### Statutory Interpretation

Section 249.785 entitled, "Charges for Sewage Disposal" states,

The board of supervisors may establish rates or charges for sewage disposal based upon the sums needed to retire the outstanding revenue bonded debt and pay the interest on these obligations. The board shall also take into consideration the need for extension of the system, repairs, replacements, overhead charges, operating expenses and the need for an operating fund out of which the district may make emergency expenditures and pay neces-sary incidental expenses. The board may differentiate between users in the rates charged on the basis of the different costs of treatment of the sewage of users or the capital contributions made by the several users.

AGP maintains that this section controls rate setting by the district and that rates may be set exclusively on the basis of (1) the cost of treatment or (2) capital contributions made by the users. According to AGP, these statutory criteria should apply to rate setting regardless of whether the property is in or out of the district and AGP should get a preferred rate due to its capital contributions.

Again, § 249.777(11) states in pertinent part:

A district may, upon such terms as may be agreed upon with the respective governing bodies or authorities concerned, authorize the use by any other governmental subdivision or other public agency of any system, works or facilities of the district constructed for any purpose herein provided so far as the capacity thereof is sufficient beyond the needs of the district. A district may extend any such system, works or facilities and permit the use thereof by persons outside the district, so far as the capacity thereof is sufficient beyond the needs of the district, "*upon such terms as the board may prescribe.*" [Emphasis added]

The sewer district concedes that § 249.785 controls rate setting with regard to users within the district but maintains that § 249.777(11) controls rate setting with regard to users outside the physical boundaries of the district.

AGP argues that § 249.777(11) in allowing the sewer district to set rates "upon such terms as the board may prescribe" grants "unlimited authority to charge outrageous rates to outside users." In opposition, the sewer district maintains that sewer district is limited and cannot charge extreme rates because the outside user is free to contract with any other sewage treatment provider in the area. (In this case that would be the City of St. Joseph Sewer District.) In addition, the

rate charged to outside users is limited by the agreed upon contract price. AGP has agreed by contract to the sum charged and presumably, if that rate were unacceptable, it could enter into negotiations with the city to provide sewage treatment service.

In interpreting statutes, this court recognizes several tenets of statutory interpretation. Courts of Appeals should use rules of statutory construction that subserve rather than subvert legislative intent; in addition, the court should not construe the statute so as to work unreasonable, oppressive or absurd results. *Jenkins v. Missouri Farmers Ass'n, Inc.*, 851 S.W.2d 542 (Mo.App. 1993). Words contained in a statute should be given their plain and ordinary meaning. *McCollum v. Director Of Revenue*, 906 S.W.2d 368 (Mo.1995). Provisions of the entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized. *Hagely v. Board. Of Educ. Of Webster Groves Sch. Dist.*, 841 S.W.2d 663 (Mo.1992).

Considering the entire legislative scheme and looking at the plain meaning of the language used, the court must attempt to harmonize each statutory enactment. Despite AGP's argument otherwise, the court finds that there is no conflict between §§ 249.785 and 249.777. The former enunciates criteria for differentiating rates between users generally and the latter specifically and plainly applies when allowing outside entities to use sewer district services. To adopt AGP's position that the sewer district must set rates based on § 249.785 criteria no matter where the property to be serviced is located, would be to ignore the plain and specific language of § 249.777 which allows the sewer district to service out-of-district users "upon such terms as the board may prescribe." Because each word, clause, sentence and section of a statute should be given meaning *State ex rel. Missouri State Bd. of Registration for Healing Arts v. Southworth*, 704 S.W.2d 219, 225 (Mo. banc 1986), the court will not construe statutes so as to render one section meaningless. Therefore, as a matter of law, summary judgment was appropriately granted on the basis that § 249.777 is controlling where a sewer dis-

trict is setting rates by contract with entities located outside the district's boundaries.

## Equitable Issues

As previously stated, the trial court made specific findings that "the rates charged to AGP were not in violation of §§ 249.777 and 249.785; that the rates charged were not unconstitutional as being in violation of due process; that the rates charged had a rational relationship to other customers similarly situated as AGP; that the rates charged have a legitimate purpose; and that the rates charged are not arbitrary and discriminatory." These findings were superfluous in that the trial court did not have jurisdiction to review the rates for reasonableness because the sewer district was acting in a purely private capacity when contracting to sell sewage treatment service for property located outside the district.

In Forest City, this court found that, "where no administrative body has jurisdiction of regulation, a court can exercise equitable jurisdiction to prevent a municipality from enforcing grossly unreasonable charges for providing utilities to residents but, as to nonresidents, the city owes no duty and sells in a purely private capacity on a purely contractual basis." *Forest City*, 569 S.W.2d at 333–34. Unlike Forest City which involved a municipal sewer district, here the court is not dealing with a municipality but a public corporation. § 249.777(1), RSMo 1994; *State ex rel. Becker v. Wellston Sewer Dist.*, 332 Mo. 547, 58 S.W.2d 988, 991 (Mo. banc 1933). It seems inappropriate to hold a public sewer district to any higher or any different standard than a municipal sewer district. Therefore, the rate charged to AGP here is strictly a matter of contract and, as such, was not subject to review on the basis of equitable principles.

The judgment is affirmed.

All concur.