28 S.W.3d 357 (2000)
In re G.P.C., a minor.
Linda Cabral and Robert H. Cabral, Petitioners/Respondents,
v.
Mary C. Cabral and Joseph R. Cabral, Respondents/Appellants.
No. ED 76060.
Missouri Court of Appeals, Eastern District, Southern Division.
August 8, 2000.
Application for Transfer Denied September 7, 2000.
Application for Transfer Denied October 31, 2000.
*360 James M. McClellan, Sikeston, for appellants.
Marcia A. Mulcahy, James W. Hahn II, Cape Girardeau, for respondents.
Application for Transfer to Supreme Court Denied September 7, 2000.
MARY RHODES RUSSELL, Judge.
Mary and Joseph Cabral, parents of a two-year-old female child, appeal from the judgment of the Cape Girardeau Circuit Court granting Linda and Robert Cabral, paternal grandparents, two hours of supervised visitation with child every three months.
Parents assert that Missouri's grandparent visitation statute, section 452.402.2 RSMo (Cum.Supp.1998), infringes upon their fundamental liberty interests as protected by the U.S. Constitution. Parents also claim the trial court erred in failing to find that grandparents' visitation would endanger child physically and emotionally. Finally, parents contend that the trial court abused its discretion by quashing their notices of deposition of expert witnesses.
We affirm in that Missouri's grandparent visitation statute is constitutional. Further, we find the trial court did not abuse its discretion in its other rulings.

Facts
Child was born November 5, 1997. Although Grandparents had visits with Child during her first six months of life, Parents denied Grandparents contact with Child after Grandfather terminated Father's employment.
Parents ceased Grandparents' contact with Child, alleging that Grandparents were harmful to Child. Parents accused Grandparents of holding Child without supporting her neck on several occasions. Parents further charge that Grandmother repeatedly told them to give Child medication when she was not sick, administered an excessive dosage of medicine to Child, and repeatedly put ointment on Child following diaper changes despite having been told that it caused a rash on Child. *361 Grandmother allegedly shook Child on one occasion in an effort to stop the Child's crying. Grandparents stated they were never informed of any of these errors on their part, while Parents testified that they informed Grandmother, but she either refused to listen or insisted on doing things her way.
Grandparents and Parents had several tense encounters with each other after Father's dismissal by Grandfather. Two such incidents resulted in father filing assault charges against Grandfather and Parents seeking an order of protection against Grandparents. The record does not reflect the outcome of the assault charges, but Grandparents testified that the protection order case had been dismissed.
Overall, Parents testified that they possessed a genuine fear that Grandmother would kidnap Child. Mother alleged that on one occasion, Grandmother screamed that she was going to take Child. In addition, Mother described an incident when Grandmother called and asked to visit, then parked in front of Parents' front door, left her car running, and hurried into the house. Mother claimed that Grandmother insisted on taking Child outside by herself, despite Mother's protests that Child first needed a coat and hat.
The thrust of Parents' accusations amounted to one complaint: Grandparents were too controlling. Parents indicated they should be allowed the freedom to make decisions regarding Child. Parents acknowledged the importance of relationships with an extended family, but they felt they should not be troubled with visitation until Child is able to communicate verbally her wishes to Parents regarding Grandparents. They expressed that the visitation proceedings have eroded the amount and quality of time they spend with Child, their financial resources, and even Child's health because she reportedly senses her parents' malaise.
Grandparents filed suit seeking visitation rights with Child, claiming they had been unreasonably denied visitation. They testified that their intention was not to interfere with Parents' efforts to raise Child, rather their goal was to have the opportunity to develop a relationship with her until she is old enough to communicate and make her own decisions. Grandparents indicated a willingness to compromise to facilitate visitation with Child and promote her best interests as determined by Parents and the court. Grandparents testified that they would like to see Child as often as possible, but they were willing to accept whatever visitation rights they would be granted.
At trial, Parents raised the issue of the constitutionality of section 452.402 in a motion to dismiss the action, but the trial court denied Parents' motion, relying on the Missouri Supreme Court decision in Herndon v. Tuhey, 857 S.W.2d 203 (Mo. banc 1993). After three days of testimony, the trial court granted Grandparents two hours of supervised visitation every three months at a neutral location in Child's hometown with parents present. Parents now appeal, again challenging the constitutionality of section 452.402.2, having preserved that alleged error at trial. Kellog v. Kellog, 989 S.W.2d 681, 687 (Mo.App.1999); St. Louis County v. Kienzle, 844 S.W.2d 118, 122 (Mo.App.1992).

I. Constitutionality

A. The Missouri Supreme Court: Herndon v. Tuhey

In their first point, Parents assert that section 452.402.2 unconstitutionally violates their fundamental liberty interests as protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.
Before addressing Parents' constitutional claim on its merits, we must first determine whether we possess subject matter jurisdiction to rule on this issue. Article V, section 3 of the Missouri Constitution provides that the Missouri Supreme *362 Court has exclusive jurisdiction over all cases involving the validity of a statute.
Raising a constitutional question, however, does not alone deprive the appellate court of power to hear an issue. AG Processing, Inc. v. South St. Joseph Indus. Sewer Dist., 937 S.W.2d 319, 322 (Mo.App.1997). Only where the constitutional claim is substantial and real, as opposed to merely colorable, will the appellate court lack jurisdiction to determine it. Hampton Foods, Inc. v. Wetterau Fin. Co., 831 S.W.2d 699, 701 (Mo.App.1992). No real and substantial constitutional question exists after the state supreme court has ruled on an issue. Id. The appeals court must follow the law established by the Missouri Supreme Court. Hellmann v. Walsh, 965 S.W.2d 198, 200 (Mo.App.1998). Therefore, we have subject matter jurisdiction and may analyze the facts of this case in conjunction with the precedent.
In Herndon, the Missouri Supreme Court addressed the issue of the constitutionality of two subsections of Missouri's grandparent visitation statute, sections 452.402.1(3) and 452.402.2. In this case, Parents challenge only section 452.402.2.
At trial, Grandparents brought their claim under section 452.402.1(3). The court appointed a guardian ad litem per section 452.402.3 and found that visitation was in Child's best interests according to section 452.402.2. Therefore, Parents' claim must be viewed as a challenge to those three subsections of the statute as they are interrelated and should be construed together. The relevant portions of section 452.402 provide:
1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when: ...
(3) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days; ...
2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child.
3. If the court finds it to be in the best interests of the child, the court may appoint a guardian ad litem for the child.
The parents in Herndon contended the statute violated the First and Fourteenth Amendments to the U.S. Constitution and argued that they had a basic, constitutional right to raise their children as they saw fit. 857 S.W.2d at 207.
In addressing that issue, the Court acknowledged that the Due Process Clause of the Fourteenth Amendment has historically protected the freedom of personal choice in marriage and family decisions. Id. The Court concluded, however, that Missouri's grandparent visitation statute did not unconstitutionally infringe on that right. Id. at 208. The Court stated that section 452.402 contemplated only "occasional, temporal visitation," which would only be allowed if a trial court found visitation to be in the best interests of the child and would not endanger the child's physical and emotional development. Id. at 209. Under these circumstances, where the intrusion is minimal and the statute is narrowly tailored to protect the interests of parent and child, the Court held that Missouri's statute is constitutional. Id. at 210. The Court upheld the trial court's finding that grandparent visitation was in the child's best interests, although it remanded on grounds that the visitation granted by the trial court was excessive.[1]Id. at 210-11.
*363 Relying on Herndon, the trial court's judgment herein granting Grandparents two hours of visitation every three months appears not to be excessive and to fall within the standard of "minimal visitation subject to reasonable restrictions." Id. at 210.

B. The U.S. Supreme Court: Troxel v. Granville

In spite of Herndon, Parents urge that a recent U.S. Supreme Court ruling should provide them relief. In Troxel v. Granville, ___ U.S. ___, 120 S.Ct. 2054, 147 L.Ed.2d 49 (U.S. 2000) (plurality opinion),[2] the U.S. Supreme Court ruled on the constitutionality of a Washington statute. The statute, Wash. Rev.Code section 26.10.160(3) (1996), allows any person to petition the court for visitation rights at any time.[3] Under that section of Washington law, visitation rights may be granted to any person when it may serve the child's best interests.
In Troxel, the U.S. Supreme Court concluded that the Washington statute, as applied to the facts at hand, violated the parent's due process right to make decisions concerning child-rearing and child care. Troxel, 120 S.Ct. at 2064 (O'Connor, J.). The Court found that a combination of factors compelled this conclusion. First, the trial court had accorded no special weight to the parent's determination of the child's best interests. Id. at 2061-62. Second, there had been no allegation that the parent was unfit, therefore a presumption arose that the parent had acted in the best interests of the child. Id. at 2061. A problem arises when a court intervenes into a fit parent's determination of the best interests of his or her child and accords no special weight to that determination. Id. at 2061-62. Indeed, the trial court presumed the opposite and placed the burden of disproving visitation on the parent. Id. at 2062-63.
The Court, however, explicitly left several issues unanswered in Troxel. The Court declined to decide whether, as a condition precedent to non-parental visitation, the U.S. Constitution requires a showing of harm or potential harm to a child if such visitation were to be denied. Id. at 2064. Its decision did not establish the precise contours of parents' due process rights regarding visitation. Id. at 2064.
In addition, the Court did not issue a per se holding that non-parental visitation statutes violate the Due Process Clause. Id. at 2064. The underlying logic of abstaining from such a decision was that states, in ruling on the constitutionality of their own non-parental visitation statutes, have made these determinations in the past on a case-by-case basis as the outcome often depends on the application of those statutes. Id. Further, the Court noted the differing provisions in the various statutes, a probable indication that the dissimilar terminology also affects their constitutionality. See id., at 2063 (noting the requirement of some statutes that the parent must have denied, or unreasonably have denied, visitation to a third party before those parties may receive visitation); id. at 2064 (noting the states' case-by-case resolution of constitutionality concerns with non-parental visitation statutes and listing the respective statute for every state) (O'Connor, J.). See also id. at 2068 (stating the Court should have denied certiorari *364 in part because of the uniqueness of Washington's statute) (Stevens, J. dissenting).
The Troxel decision fails to provide Parents any relief from the mandate of Herndon. Troxel does not compel this court to deviate from Herndon for several reasons.
First, the wording of the Washington statute is drastically different from that of the Missouri statute. Missouri's statute provides much greater protection of parents' decisions than does the Washington statute because under section 452.402.1(3) the denial must both be unreasonable and have continued for at least ninety days before grandparents may file an action seeking visitation. See Troxel, at 2063 (O'Connor, J.). The Washington statute allows any person to petition for visitation rights at any time, id. at 2063-64, while section 452.402 addresses only grandparents' rights to petition for visitation. At least one Missouri appellate court has refused to extend that standing to step-grandparents. See Hampton v. Hampton, 17 S.W.3d 599, 602 (Mo.App.2000). Consequently, Missouri's statute does not create the potential of subjecting parents' every decision to review at the behest of endless third parties. See Troxel, 120 S.Ct. at 2060-61 (O'Connor, J.).
Second, the U.S. Supreme Court indicated that another fault of the Washington statute was that the judge alone had the power to determine the child's best interests. Id. In comparison, section 452.402.3 establishes a judge's power to appoint a guardian ad litem to participate in proceedings to determine grandparents' visitation rights.
Third, the U.S. Supreme Court expressly recognized that the Washington Supreme Court did not seize its opportunity to interpret the Washington statute to protect it from invalidation. Id. at 2064-65 (O'Connor, J.). To the contrary, the Missouri Supreme Court in Herndon started with the presumption of the statute's constitutionality and noted that interpretation in accordance with the constitution was required where possible. 857 S.W.2d at 207. In general, the Missouri Supreme Court only invalidates statutes that "clearly and undoubtedly" contravene "fundamental law embodied in the constitution." Linton v. Mo. Veterinary Med. Bd., 988 S.W.2d 513, 515 (Mo. banc 1999). Additionally, the Missouri Supreme Court will resolve all doubts in favor of a statute's validity and interpret statutes consistently with the constitution when possible. Silcox v. Silcox, 6 S.W.3d 899, 903 (Mo. banc 1999).
Finally, the facts of the two cases also differ significantly in the amounts of visitation the grandparents had before and after trial. In Troxel, the grandparents sought court intervention after their visitation was curtailed from a regular basis to monthly visits and inclusion in the children's holiday celebrations. They petitioned for visitation of two weekends per month plus two weeks in the summer. Troxel, 120 S.Ct. at 2057-58. In the present case, Grandparents had not seen Child for more than seven months at the time the trial court's judgment was entered, and the visitation granted was two-hour supervised visits every three months.
One similarity between Troxel and the instant case is that neither includes a finding or allegation of unfit parents. Therefore, parents are entitled to the presumption that as fit parents, they act in the best interests of their children. Id. at 2061 (O'Connor, J.). The U.S. Supreme Court indicated that among the factors leading it to invalidate the Washington statute was that it appeared as though the Washington Superior Court had improperly required the parents to disprove that visitation with their grandparents would not be in the girls' best interests. Id. at 2062. The Court noted that the problem was not the intervention of the Superior Court, but the fact that it omitted any consideration of the parent's decision regarding *365 the children's interests. Id. at 2061-62.
There is no indication, however, in the present case that the trial court operated under any such presumption or that grandparents, as petitioners, received relief from the burden of proof at any time. Under Missouri and Washington law, the petitioning party must prove that visitation is in the child's best interests. Rev.Code Wash. Section 26.10.160(3); sections 452.402.1(3) and 452.402.2 RSMo.
The U.S. Supreme Court decision in Troxel, then, does not affect Herndon as applied in this case. Section 452.402 offers significant protections to parents in Missouri that are unavailable under the Washington statute discussed. In addition, the level of visitation ordered by the trial court in this case creates a minuscule intrusion into Parents' lives, unlike the significant visitation granted in Troxel. The Court in Troxel invalidated the Washington statute only as applied, and the application of Missouri's statute in this instance, under Missouri and U.S. Supreme Court precedent, does not violate the U.S. Constitution.

C. Standard of Review
Parents suggest that this court's analysis should be based upon a different standard of review than the one used by the Missouri Supreme Court in Herndon. Our court must equally follow the standard of review determined by the Missouri Supreme Court as it must follow that court's overall conclusion regarding the statute's constitutionality. Johnson v. City of Springfield, 817 S.W.2d 611, 615 (Mo.App.1991).
Parents cite Justice Covington's dissent in Herndon as the foundation for their claim that strict scrutiny review should be invoked when Missouri courts review cases granting grandparent visitation. Strict scrutiny, the highest level of review, requires a compelling government interest to justify intrusion into a fundamental right. Herndon, 857 S.W.2d at 211 (Covington, J., dissenting). In addition, any intrusion must be narrowly tailored to fit the purpose so as to create the smallest intrusion possible. State ex rel. Coker-Garcia v. Blunt, 849 S.W.2d 81, 85 (Mo.App.1993); Deaton v. State, 705 S.W.2d 70, 73 (Mo.App.1985).
The majority in Herndon concluded that strict scrutiny did not apply because the impact of the visitation did not amount to a substantial infringement or a heavy burden on the parents' fundamental rights. Herndon, 857 S.W.2d at 208. The majority determined that visitation granted per sections 452.402.1(3) and 452.402.2 constituted a "less than substantial encroachment on a family," the impact of which would be minimal enough to avoid heightened scrutiny and permit rational basis review instead. Id. at 208-09. To justify an intrusion under this lower standard of review, the court must determine that the statute bears a rational relationship to a legitimate government purpose. Id. The court in Herndon decided that the statute passed that test, and it is not within this court's power to decide otherwise. Id. at 210.
Despite Parents' assertions, Troxel does not compel a different result. With the exception of Justice Thomas, the plurality in Troxel scarcely mentions the appropriate standard of review for such cases. Justice O'Connor mentions "heightened protection" for "certain fundamental rights and liberty interests" but does not explicitly indicate strict scrutiny as the appropriate standard of review for evaluating non-parental visitation statutes. Troxel, 120 S.Ct. at 2059-60 (O'Connor, J.). See also id. at 2068 (Thomas, J., concurring). Justice Thomas expressly promulgates strict scrutiny as the applicable standard of review in cases involving parents' fundamental right to control child-rearing decisions. Id. (Thomas, J.).
Conflating the three plurality opinions in Troxel does not indicate that the Missouri *366 Supreme Court's use of rational basis review in Herndon was incorrect. Nothing in Troxel indicates that the Herndon court erred by using a less demanding standard of review when the statute involved a minimal intrusion, nor does anything in Troxel invalidate the precedent upon which Herndon based its justification for using a lower standard of review. Parents' advocacy of the strict scrutiny standard of review does not receive support from Troxel.
This court, which is bound by Herndon, finds that Troxel offers no relief to Parents in this case regarding the constitutionality of section 452.402.2, nor concerning the applicable standard of review. The differences in facts, statutory language, and precedent, combined with the unanswered questions of Troxel, lead this court to conclude that the application of Missouri's grandparent visitation statute in this case was constitutional and that the statute itself remains viable post-Troxel. This court lacks the power to alter the standard of review from what the Missouri Supreme Court has established. Parents' first point is denied.

II. Failure to find visitation will endanger Child
In their second point, Parents assert the trial court abused its discretion by failing to find that visitation would endanger Child physically and emotionally. Parents contend the trial court additionally erred by failing to explicitly enumerate a finding that no domestic violence had befallen child at Grandparents' hands.
We cannot reverse the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Evidence and inferences that correspond with the trial court's decision are viewed in the light most favorable to the decision. Laffey v. Laffey, 4 S.W.3d 655, 658 (Mo.App.1999).
Special importance is conferred on trial court decisions in domestic cases. Snoke v. Bordenaro, 913 S.W.2d 407, 409 (Mo.App.1996). Much deference is given to a trial court's ability to determine witness credibility. Laffey, 4 S.W.3d at 658. See also Rule 73.01(c)(2). A trial court determines what portions of a witness's testimony to believe or disbelieve. Laffey, 4 S.W.3d at 658. Even if the evidence could have supported another conclusion, deference must be given to the trial court's decision under this standard of review. Id. Specifically, in visitation cases, the appellate court gives deference to the trial court's determination of what constitutes the child's best interests. Thomas v. Thomas, 989 S.W.2d 629, 633 (Mo.App.1999).
We find the trial court's decision was not against the weight of the evidence. Without restating the entire transcript, a few examples demonstrate reasons the trial court could reasonably have disbelieved Parents' claims of abuse.
First, Parents claim that Grandparents did not properly hold Child. Also, they testified that Grandmother over-medicated her and insisted on using an ointment that caused a rash. Further, Parents allege they caught Grandmother shaking Child while telling her to stop crying. Yet, Parents subsequently agreed to let Grandparents watch Child, unsupervised, while Parents went to dinner to celebrate Father's birthday.
Second, the trial court heard conflicting testimony from both Parents and Grandparents as to what had occurred on several occasions. However, two other disinterested witnesses contested the testimony of Parents and Mother's brother regarding an incident where Mother accused Grandmother of threatening to kidnap Child.
Third, the guardian ad litem's (GAL's) report concurred with the trial court, concluding that visitation with Grandparents was in Child's best interests. The GAL indicated that Parents' accusations had *367 "varied and become more extreme" throughout the proceedings. The GAL also noted that Parents "were adamant that no visitation would take place, whether ordered by the Court or not." Indicating a plan to disregard a court's order does not serve well to indicate one's respect for the judicial process, including taking an oath and testifying.
The trial court found that Parents' accusations were "petty and immature" and granted Grandparents visitation. The decisions of the trial court and the GAL separately concluded that visitation with Grandparents would be in Child's best interest and that it would not endanger child's physical health or impair her emotional development.
The conclusion that Parents acted unreasonably could have derived from several places in the record. Parents claim that father did not like to be called by his middle name, "Robert," also Grandfather's name, yet Mother describes several incidents when, in the heat of the moment, she called her husband "Rob" or "Robbie." At one point, Parents placed signs in their yard with Grandparents' names and the statement "You are not welcome here." The trial court also noted that Parents' close relationship with Child's maternal grandparents exacerbated the situation by increasing the animosity between the families. Although this testimony does not weigh directly into a finding of whether visitation with Grandparents would be in Child's best interests, they could have influenced the trial court's decision regarding credibility of the witnesses.
Under the applicable standard of review, the trial court's decision was not against the weight of the evidence, and it was sufficiently supported by the evidence. We affirm the conclusion reached by the trial court that visitation is in Child's best interests and will not harm her.
The second prong of Parents' argument is that the trial court committed error by omitting an explicit enumerated finding that no domestic violence had befallen Child at Grandparents' hands. Parents base their claim on Gant v. Gant, 892 S.W.2d 342 (Mo.App.1995), and its interpretation of section 452.375.2(5), RSMo (Cum.Supp.1993).[4] Neither the statute nor the case applies to the facts herein.
Section 452.375 includes definitions for various types of child custody arrangements following the dissolution of a marriage, for example, "joint legal custody" or "joint physical custody." That statute is irrelevant here as this is not a dissolution proceeding. The only class into which Grandparents could possibly fit would be "third party custody," section 452.375.1(4). Beyond the "third party" denomination, section 452.375 does not apply in this grandparent visitation case. Neither section 452.375 nor section 452.402 cross-references the other. In short, section 452.375 does not affect section 452.402 or Grandparents' visitation. If the legislature had intended such a connection, it could have drafted section 452.402 or section 452.375 to reference each other. As it did not, we decline the overly broad interpretation of section 452.375 that Parents advocate.
Furthermore, the facts in Gant do not relate to the facts of this grandparent visitation case. The record in Gant reflects uncontroverted testimony that the father engaged in domestic violence or abuse. The evidence in this case does not reflect "substantial evidence" of domestic violence or abuse as in Gant. 892 S.W.2d at 346. The allegations in this case generally are less serious than in Gant, and every allegation of abuse in this case is contested, unlike Gant, where the father admitted to several acts of violent behavior. See id. at 343-44.
*368 Parents' rely on an analysis of facts extremely different from this case and a statute that does not apply to grandparent visitation. Parents essentially ask this court to reweigh the evidence, a task we cannot undertake under the applicable standard of review. Parents' second point is denied.

III. Quashing depositions and refusing to reopen evidence
In their third point, Parents assert that the trial court abused its discretion by quashing their notices of deposition of additional witnesses and by refusing to either grant their motion for new trial or to reopen the evidence to admit expert testimony.
A trial court's decision regarding the admissibility of evidence falls within its discretion and will not be disturbed unless it abuses that discretion. Nelson v. Waxman, 9 S.W.3d 601, 604 (Mo. banc 2000). Abuse of discretion occurs when a trial court's ruling clearly falls opposite the logic of the circumstances before that court "and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." Id. (quoting Oldaker v. Peters, 817 S.W.2d 245, 250 (Mo. banc 1991)). The trial court's decision to quash the notices of deposition and to deny the proffered expert evidence in this case was not an abuse of discretion.
The court heard testimony on three days in the course of a month. Parents did not file their notices of deposition until almost two months after the judgment was entered. Parents sought to depose a counselor and child's pediatrician, who had written letters opining as to the effects of grandparent visitation on Child. The pediatrician discussed the physical effects of visitation on Child, and the counselor's letter focused on Child's emotional development.
Counsel for Parents attempted to have Father read from the pediatrician's letter during his testimony. The court sustained a hearsay objection, and Parents' counsel requested that the record be left open for the purpose of admitting copies of Child's records or for taking the pediatrician's deposition. The court indicated that the request would be taken under advisement, but that such a request would not likely be granted where the trial had occurred over such an extended period of time.
Parents fail to explain why they had not previously deposed Child's pediatrician or the counselor, especially if they were concerned with Child's physical and emotional well-being and the effects of visitation on Child. Further, they failed to offer any reason why they waited nearly two months after the judgment before seeking to depose these potential witnesses.
The cited error amounts to nothing more than a lack of efficiency in Parents' presentation of evidence. Although rule 78.01 grants a trial court wide discretion to open a judgment and take additional testimony on a motion for a new trial in court-tried cases, the trial court did not abuse its discretion in refusing Parents' request. In re Coe, 903 S.W.2d 916, 918 n. 1 (Mo. banc 1995). Parents' third point is denied.
The judgment of the trial court is affirmed.
MARY K. HOFF, C.J., and SHERRI B. SULLIVAN, J., concur.
NOTES
[1] Subsequent appeals involving the grandparent visitation statute have not disputed the facial constitutionality of section 452.402, rather, they have challenged its application. See Ray v. Hannon, 14 S.W.3d 270, 273 (Mo.App.2000); Whoberry v. Whoberry, 977 S.W.2d 946, 950 (Mo.App.1998); Komosa v. Komosa, 939 S.W.2d 479, 483 (Mo.App.1997).
[2] The plurality in Troxel consisted of Justice O'Connor, joined by Chief Justice Rehnquist and Justices Ginsburg and Breyer; Justice Souter; and Justice Thomas. The dissenters included Justices Stevens, Scalia, and Kennedy, each writing separately.
[3] Section 26.10.160(3) provides:

Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.
[4] This subsection was renumbered, but not changed substantively, to section 452.375.2(6) in RSMo (Cum.Supp.1998).